GROMBACH PRODUCTIONS, INC., Respondent, *v.* FRED M. WARING, Appellant.

Argued October 16, 1944; decided December 30, 1944.

. *A. Walter Socolow* for appellant. I. Respondent, having voluntarily disclosed its idea, has no right of action against a subsequent user of the idea. *Bristol* v. *E. L. A. Society,* 132 N. Y. 264; *Lueddecke* v. *Chevrolet Motor Co.,* 70 F. 2d 345; *Fendler* v. *Morosco,* 253 N. Y. 281; *Williamson* v. *New York Central R. R. Co.,* 258 App. Div. 226; *Rodriguez* v. *Western Union Tel. Co.,* 259 App. Div. 224, 285 N. Y. 667; *Stone* v. *Liggett & Myers*

*Tobacco Co.*, 260 App. Div. 450; *Soule* v. *Bon Ami Co.*, 201 App. Div. 794; *Stern* v. *Laemmle Music Co.*, 74 Misc. 262; *Hamilton Mfg. Co.* v. *Tubbs Mfg. Co.*, 216 F. 401; *Affiliated Enterprises* v. *Gruber*, 86 F. 2d 958; *Bowen* v. *Yankee Network*, 46 F. Supp. 62; *Miller* v. *Schloss*, 218 N. Y. 400.) II. The trial court gave the jury no proper criterion by which to determine whether a contract implied in law exists. The jury's verdict is therefore without foundation in law. (*Clarke* v. *Schmidt*, 210 N. Y. 211.) III. Since the jury specifically found that appellant made no consensual agreement with respondent, the alleged trade custom could not be the basis of a contract implied in law. (*Stulsaft* v. *Mercer Tube & Mfg. Co.*, 288 N. Y. 255; *Harris* v. *Tumbridge*, 83 N. Y. 92; *Walls et al.* v. *Bailey*, 49 N. Y. 464; *Vietor* v. *National City Bank*, 200 App. Div. 557; *Dobson* v. *Kuhnla*, 66 Hun 627; *Blank* v. *Marine Basin Co., Inc.*, 178 App. Div. 666; *Higgins* v. *Moore*, 34 N. Y. 417; *O'Connor* v. *Bankers Trust Co.*, 159 Misc. 920, 253 App. Div. 714, 278 N. Y. 649; *Johnson* v. *Winslow*, 155 Misc. 170, 246 App. Div. 800, 272 N. Y. 467.)

*Stanley M. Lazarus* and *Max Schoengold* for respondent. I. Plaintiff's disclosure of the formula to the defendant was protected by the implied contract which came into existence under the custom in the industry. (*Buckin* v. *Long Island R. R. Co.*, 286 N. Y. 146; *Thomas* v. *First National Bank of Lisbon*, 263 App. Div. 476; *Cole* v. *Lord*, 262 App. Div. 116; *Healey* v. *Macy & Co.*, 277 N. Y. 681; *Meech* v. *Smith*, 7 Wend 315; *Justice* v. *Lang et al.*, 52 N. Y. 323; *Holcroft* v. *Barber*, 1 Corr. & Kir. 4; *Wilson* v. *Kymer*, 1 M. & S. 157; *Morgan* v. *Ravey*, 6 H. & N. 265.) II. The trial court did not commit error in its charge. (*Small* v. *Housman*, 220 N. Y. 504; *Sperry* v. *Union Railway Co.*, 129 App. Div. 594; *Miller* v. *Schloss*, 218 N. Y. 400; *McManus* v. *Woolverton*, 47 N. Y. St. Rep. 107, 138 N. Y. 648; *Reando* v. *Mosplay*, 90 Mo. 251; *Manufacturers Trust Co.* v. *Gray*, 278 N. Y. 380; *Noyes* v. *Parker*, 64 Vt. 379; *County of Oneida* v. *First Citizens B. & T. Co.* [Nos. 1, 2], 264 App. Div. 212; *Sayer* v. *Wynkoop*, 248 N. Y. 54; *Seeber* v. *People's Building Loan Assn.*, 36 App. Div. 312; *Barney* v. *Fuller*, 61 Hun 618, 133 N. Y. 605.)

LEWIS, J. The plaintiff, Grombach Productions, Inc., is engaged in originating radio programs for sale to commercial advertisers. The defendant, Fred M. Waring, is an orchestra

leader who produces and broadcasts commercially sponsored radio programs.

The plaintiff has been awarded a jury verdict at Trial Term upon a complaint which alleged in substance that the plaintiff originated an " idea " for a broadcast, known as " Your Song " or " Stop, Look and Listen," in which the radio audience was to be solicited to write to the commercial sponsor the name of a song which associated itself with some experience in the writer's life that could be recounted or dramatized by radio followed by the introduction of the song into the program; that after the plaintiff had communicated the idea to John O'Connor, an agent of the defendant, and without the plaintiff's knowledge or consent and in violation of its proprietary rights therein, the defendant appropriated the idea and employed it in identical form in programs broadcast by him. Three causes of action are pleaded: The first alleges the appropriation and use by the defendant of the plaintiff's " idea " without payment therefor; the second alleges the breach of an express contract to pay for such use; the third — with which we are particularly concerned upon this appeal — alleges that plaintiff submitted its plan to the defendant in conformity with a well-established custom " in the field of advertising and more especially in the field of radio program production and creation that programs, ideas and schemes are submitted to advertising agencies and to radio program producers and radio artists for the purpose and with the intent of having such advertising agencies, producers or artists either engage the services of the person presenting said program for the purpose of producing the same or for the purpose of having such advertising agency obtain commercial sponsors for said program or for the purpose of having such producer or artist purchase such program on a commercial basis "; that in conformity with such custom the plaintiff submitted the program and idea known as " Your Song " to the defendant for the purpose of realizing financial profit from any use that might be made of it; that despite such custom and in violation thereof, the defendant adopted plaintiff's idea but failed and refused to compensate the plaintiff, thereby causing the plaintiff monetary damages sought herein.

At Trial Term the second cause of action, based upon an express contract, was withdrawn by the plaintiff at the close

of its evidence. The two remaining causes of action were submitted to the jury on the theory that the first was based on a contract implied in fact and the third was based on a contract implied in law. The Trial Justice submitted to the jury two special questions: (1) Was there a contract implied in fact — which the jury answered " no "; and (2) Was there a contract implied in law — which the jury answered " yes." Upon the latter answer the jury awarded to the plaintiff a verdict of $13,000 which, upon a stipulation by the plaintiff, the Trial Justice reduced to $6,500. The Appellate Division, one Justice dissenting, modified the judgment by reinstating the jury's verdict.

In view of the jury's finding as to the first cause of action — that no contract implied in fact had been proved — and the second cause of action alleging the breach of an express contract having been withdrawn, there remains for our consideration only the third cause of action which the trial court treated as one " alleging a contract implied in law, based in part on the customs of the trade ".

The plaintiff does not claim that the " idea " or formula known as " Your Song " was ever communicated directly to the defendant. It appears from the testimony of the plaintiff's president Grombach, that there were six occasions when, by telephone conversations with Waring's agent O'Connor, he failed in his effort to arrange a luncheon meeting with the defendant at which he could bring to the defendant's attention the idea or program which he claimed was well adapted for use by the defendant's orchestra. In one of those telephone conversations, according to Grombach's testimony, he " explained the idea to [O'Connor] roughly over the phone." He claims further that he later sent to O'Connor a letter in which he stated — " The attached might interest you and, by the way, don't forget I'd like to talk to Fred and yourself about this vehicle I spoke to you about before." Grombach also testified that he enclosed in the letter a " presentation " — defined by him as " an outline of the idea together with a list of the elements of the idea * * * " — and that he spoke later to O'Connor who acknowledged receipt of the letter and the " presentation." The plaintiff, however, failed upon the trial to identify the " presentation ", which he claims to have sent to O'Connor and accord-

ingly it was rejected as evidence in the case. The plaintiff charges that, after the communications claimed to have been had by its president Grombach with O'Connor, the defendant Waring appropriated plaintiff's idea and used it in four broadcasts which he conducted in January, 1939.

When O'Connor was called as a witness for the defendant he denied receiving the letter which Grombach claims to have sent him. He recalled a telephone conversation in which Grombach asked for a luncheon engagement with the defendant " because he (Grombach) had an idea," but O'Connor denied that at any time Grombach told him of " the nature or character of the idea."

The defendant Waring denied that he appropriated the plaintiff's " idea " or program. He testified that prior to the present suit he had received no knowledge or information as to the creation or production of the radio program idea claimed by the plaintiff in this action; that he had seen no script or presentation relating to the idea and had never talked to the plaintiff's president Grombach with respect to such an idea. The defendant also testified that O'Connor had never brought to his attention directly or indirectly " the radio program idea created by the plaintiff in this action " or any prospectus or presentation of such a program; that O'Connor never mentioned to him any communication between him (O'Connor) and the plaintiff corporation " relative to program ideas," nor did the defendant at any time authorize O'Connor to do any business with the plaintiff on his behalf.

The defendant admits that in four broadcasts in January, 1939, he used as a short interlude a formula, suggested by his own publicity technique expert, during the performance of which he urged his radio listeners to write him letters referring to some experience in which a song changed the course of the writer's life. Concededly the formula for that interlude differed widely from the " idea " of which the plaintiff now claims to be the originator. It bore the title " The Tune That Turned the Tide "; the letter writer did not participate in its rendition and its duration was only a few minutes as compared with the longer period required for the performance of the program which is the subject of the present suit.

We may eliminate as a basis for the defendant's liability the alleged breach of an express contract, because the plaintiff has withdrawn that charge. We may also eliminate as a basis for the defendant's liability a contract implied in fact, because a jury has found that the plaintiff's evidence failed to establish such a contract. That finding, however, has an important bearing upon our present problem. This court has said — " A contract cannot be implied *in fact* where the facts are inconsistent with its existence; or against the declaration of the party to be charged; or where there is an express contract covering the subject-matter involved; or against the intention or understanding of the parties; or where an express promise would be contrary to law. The assent of the person to be charged is necessary and unless he has conducted himself in such a manner that his assent may fairly be inferred he has not contracted." (*Miller* v. *Schloss,* 218 N. Y. 400, 406–7.) Applying to the case at bar the rule stated in the sentence last quoted above, which the Trial Justice read to the jury, we may infer from the jury's finding — that no contract implied in fact existed — that the defendant did not assent to the unsolicited disclosure to him of the plaintiff's " idea " and that the defendant did not conduct himself in a manner which imports his assent.

In *Miller* v. *Schloss* (*supra,* at p. 407) it was said that a contract implied in law  " * * *  is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which *ex aequo et bono* belongs to another." (See, also, 1 Williston on Contracts, [rev. ed.], § 3, p. 9.) Guided by that definition we have reached the conclusion that the Trial Justice erroneously permitted the jury to find the existence of a contract implied in law " based in part on the customs of the trade," as he expressed it. By that expedient the jury — after finding that there was no evidence of the defendant's assent to the plaintiff's unsolicited disclosure of its idea — was permitted to substitute for such assent evidence of an alleged custom in the field of radio program production. That custom was described by the plaintiff's president as follows: " When someone submits the formula of a program to an agency,

advertiser, network, or talent, the people to whom it is presented either are interested in that idea and take the idea and pay a reasonable value therefor, or make a deal with the person who produced the program based on that formula, or they do not do anything with it and forget about it. In other words, there is a relationship of trust there.'' (It should be said that the sentence last quoted above was stricken out by the Trial Justice).

Such a custom — '' * * * cannot create a contract where there has been no agreement by the parties and none is implied by law; nor can it give validity to a contract which the law declares void.'' (*Stulsaft* v. *Mercer Tube & Mfg. Co.*, 288 N. Y. 255, 260.) In the present case no '' deal '' was made between the plaintiff and defendant. The jury has so found. And if we accept the testimony of the plaintiff's president that he explained to O'Connor '' roughly over the phone '' the '' idea '' which he desired to bring to the defendant's attention, that disclosure, as we have seen, came to O'Connor unsolicited either by him or by the defendant. Even though it be assumed that on a subsequent occasion the defendant Waring caused to be arranged and performed in a radio broadcast an interlude in which there were elements common to the plaintiff's idea, the prior gratuitious, unsolicited disclosure allegedly made by the plaintiff's president, unprotected by contract, does not create an enforcible contract implied in law. (*Miller* v. *Schloss, supra,* p. 407; *Bristol* v. *E. L. A. Society,* 132 N. Y. 264, 267; *Rodriguez* v. *Western Union Telegraph Co.*, 259 App. Div. 224, 225, affd. 285 N. Y. 667.)

The judgments should be reversed and the complaint dismissed, with costs in all courts.

LEHMAN, Ch. J., LOUGHRAN, RIPPEY, CONWAY, DESMOND and THACHER, JJ., concur.

Judgments reversed, etc.