## DE FILIPPIS v. CHRYSLER CORPORATION et al.

No. 5, Docket 20011.

Circuit Court of Appeals, Second Circuit.

Feb. 11, 1947.

---

William J. Rapp, of New York City (Samuel Hershenstein, Solomon Kaufman, and Robert A. Siebert, all of New York City, of counsel), for appellant.

John B. Cunningham, of New York City (Max W. Zabel, Edward C. Gritzbaugh, and Edward U. Dithmar, all of Chicago, Ill., of counsel), for appellees.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

SWAN, Circuit Judge.

This is an action by Raymond de Filippis to recover for unjust enrichment resulting from the alleged appropriation by Borg-Warner Corporation[1] of confidential information. The action was commenced on March 14, 1940 in the state Supreme Court for the County of New York; it was removed to the federal court, and was tried without a jury.

The confidential information which the defendant is charged with appropriating was disclosed to it by the plaintiff in October 1931. This information consisted of a copy of the specifications and drawings of the plaintiff's patent application, dated June 11, 1929, for "automatic gearless transmission".[2] After keeping the documents nearly nine months, during which time they were studied by the defendant as shown by its letters, they were returned to the plaintiff with the statement that the defendant did not wish to spend money to develop the device. In March 1934 the defendant began manufacturing and selling an "overdrive" mechanism which the plaintiff asserts embodies a combination of elements disclosed in the specifications and drawings he had submitted in 1931. The trial judge concluded that the plaintiff disclosed nothing of novelty or patentability, and the defendant neither appropriated nor used anything disclosed to it by the plaintiff. Accordingly the complaint was dismissed on the merits, with an opinion which thoroughly discusses the facts and the law, D.C., 53 F.Supp. 977.

In his brief on appeal the plaintiff says that the accused device, like his own, employs the following combination of elements:

"1. Free-wheeling or over-running whereby the driven shaft is permitted or is enabled to overrun or rotate at a speed greater than that of the drive shaft at all speeds except the ultimate.

"2. Sliding shafts which effect a connection of the drive and driven shafts, at the ultimate speed.[3]

"3. A governor employing the principle of centrifugal force to effect the sliding of the shafts.

"4. A positive, non-overrunning connection of the drive and driven shafts in a fixed relationship at the ultimate speed."

Examination of the patent specifications and the schematic drawings, the only sources of information the defendant had, discloses that the portion of plaintiff's device shown in figure 1 of the drawings constitutes an "infinitely variable" gear shift. The driving shaft imparts a reciprocating motion by means of a crank and link to a rocker arm pivoted on a slidable fulcrum. The arm transfers this reciprocating motion to a yoke sliding on a stationary bar, which

---

[1] The appellant's brief states that "Borg-Warner may be treated as though it were the sole defendant in the action"; we shall so refer to it.

[2] Patent No. 1,968,030 was issued to de Filippis on this application on July 31, 1934.

[3] No claim is made for the principle of overdrive, although the plaintiff's device is theoretically capable of achieving it. "Overdrive" is merely a word for another gear above the one-to-one ratio, just as low gear is called "underdrive."

yoke is connected to pawls that turn a ratchet fixed to the driven shaft. In place of the pawl and ratchet mechanism, a cam and shoe clutch (a one-way, or overrunning clutch) is suggested as an alternative method. Either method—pawl and ratchet, cam and shoe—by its very nature must allow the driven shaft to rotate free while the pawl or the shoe is making its return stroke, and by the same token must allow the driven shaft to run faster than ("overrun") the drive shaft. This would mean, if the device were installed in a car, that the car could coast, or free-wheel automatically. In order to accomplish "infinitely variable" shifting, the fulcrum is moved along the rocker arm, thereby changing the leverage and mechanical advantage of this part of the system in a manner corresponding to shifting gears in a conventional transmission. During the movement of the fulcrum, the car would be undergoing a gradual change in leverage from low gear to high gear, but without the three marked stages present in the conventional transmission. The patent specifications provide that the fulcrum may be moved by "any suitable actuating means," and later state that "The invention can automatically control the speed of the driven shaft, for which purpose a governor 57 is provided." This, the sole mention of a governor, describes and portrays the governor as being connected up with the sliding fulcrum. Plaintiff does not claim that the defendant appropriated anything thus far described except the overrunning feature and the governor.

In figure 2 of plaintiff's drawing, the driven shaft is splined, and is axially (longitudinally) slidable to permit additional ratchets (or their equivalent, overrunning clutches) to be substituted when other ratios are desired or when reversing, and also to permit the driven shaft to be connected directly to the driving shaft "by any suitable clutch." Once the two shafts are connected directly, the overrunning clutch is by-passed or "locked out" and the car may not coast or free-wheel, but must either be driven by the engine or work against the engine's compression. The specifications state:

"The lengthwise movement of the shaft 31 may be obtained in various ways. Thus a collar 53 may be provided therein, which is engaged by a lever 54, pivotally mounted at 55, and operated by a rod 56. The three progressive positions of the shaft for driving in forward, then in reverse, and finally in direct, are thus easily obtained by a progressive movement of the actuating rod 56. The latter may be manipulated manually, or in any other desired manner."

This is the only suggestion plaintiff makes of a means of sliding the shaft—"manually, or in any other desired manner"— and it is from this one general phrase that he maintains that defendant derived the idea of its centrifugal clutch.

Turning to the accused device, defendant's overdrive mechanism is separate from the regular transmission, and is installed on the propeller shaft between the transmission and the differential. Its purpose is to add a fourth forward speed, not so much to make the car go faster, as to allow the engine to turn more slowly for the sake of economy. In its simplest form, it is a centrifugal clutch set to operate at a predetermined car speed to engage the overdrive gear train. Above 40 miles per hour, the centrifugal force developed by the whirling shaft moves a set of weighted lugs (called "clutch dogs") radially out from their normal positions at the center of the shaft; these dogs try to enter a corresponding set of slots in a surrounding cage connected to the overdrive gears, but since the dogs are rotating at a higher speed than the surrounding cage, they can not enter. The driver of the car takes his foot from the accelerator pedal for an instant; an overrunning clutch in the mechanism allows the driven shaft to coast at the same speed while allowing the drive shaft to slow down. At the moment when the drive shaft has dropped to approximately seven-tenths of the speed of the driven shaft, the clutch dogs and the outer slots are synchronous and can engage. The engine now turns at say 35 miles per hour, but the car travels at 50. The drive shaft is now turning the over-drive gears in a two-way relationship, and the one-way (overrunning) clutch is locked out. When the car's speed drops below 40 miles per hour, retractile springs overcome the lessened centrifugal force,

pull the dogs from the surrounding slots, and the overdrive train is automatically disengaged. Once more the engine turns the drive and driven shafts at a one-to-one ratio, but through the free-wheeling (overrunning) clutch. Because free-wheeling is dangerous under certain conditions, especially on hills where there is a danger of the car's "running wild," a manual lockout is also provided, which also locks out overdrive. The accused device allows the splined shaft to be shifted longitudinally in and out of engagement with the freewheel clutch; the motion is controlled manually by a shift fork operated from the dashboard.

Both plaintiff's and the accused device have an overrunning feature, splined shafts axially slidable by means of a manual shifting fork, and both lock out the overrunning feature by this method. But defendant had manufactured a transmission containing not only sliding shafts and shift fork, but also an overrunning clutch, which was locked out manually, as early as 1930—more than a year before plaintiff made his "disclosure." Certainly plaintiff cannot be said to have disclosed to defendant a device which defendant was already manufacturing.

That disposes of the overrunning, the lock-out, the sliding shafts, and the positive connection—which are the first, second and fourth elements appellant's brief asserts were appropriated. What is left is the third element, namely, "a governor employing the principle of centrifugal force to effect the sliding of the shafts." It is important to recall that the only mention made in the disclosure was of a governor connected to the fulcrum in the infinitely variable gear shift part of the device, where the governor was intended to "automatically control the speed of the driven shaft." It was not suggested as a method of sliding the shaft in the second part unless the phrase, "or in any other desired manner," can be said to indicate this to those skilled in the art. As the court said below, D.C., 53 F.Supp. 977, 981:

"If by the use of those words he meant to leave it to those skilled in the art to figure out what other 'desired manner' would be used, it cannot be said that it would be novel. * * * It is strange that as this is obviously the most important feature claimed for his device, and admittedly the only one that could be said to be novel, that he did not disclose it definitely, and in detail, as he did in the next paragraph with reference to his speed governor. It certainly could not have been considered important when he sent the description to the defendant, or it would not have been left to guesswork."

Even granting the plaintiff the most generous interpretation of "any other desired manner," we still think that defendant's centrifugal clutch differs materially from plaintiff's speed governor; nor does defendant use centrifugal force to effect the sliding of the shafts. It follows that defendant used nothing which plaintiff disclosed, and the decision below must be affirmed.