## MITCHELL NOVELTY CO. v. UNITED MFG. CO.

### No. 10599.

United States Court of Appeals Seventh Circuit.

Oct. 17, 1952.

Rehearing Denied Nov. 14, 1952.

See also, 94 F.Supp. 612.

Warren C. Horton, H. B. Krulewitch, Dwight McKay, Chicago, Ill., for appellant.

Benjamin M. Becker, Bernard Savin, Robert H. Greenberg, Clarence E. Threedy, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff corporation, located in Milwaukee, Wisconsin, is an operator of amusement devices. Defendant corporation, located in Chicago, is a manufacturer of such devices. Joseph E. Beck is president of the former and Lyndon A. Durant of the latter. While the suit is between the two corporations, the dealings and activities giving rise to the litigation took place between Beck and Durant.

We have difficulty in discerning the precise nature of the issues involved. The complaint alleges that Beck "conceived an idea original with him, for the development of a coin-operated game, which game contained certain unique features theretofore unused by the coin-machine industry"; that "incorporated into said game was an electrically controlled automatic scoring device" and "an automatic return to the player, of the puck or weight, said device being more commonly known as a 'puck roll-back', the amusement game in this paragraph described, will for convenience be hereafter referred to as 'Shuffle Alley'", and that " 'Shuffle Alley' so conceived became and was a property right of the plaintiff and of great value."

The complaint alleges that negotiations were commenced between the parties during the latter part of July, 1949, with reference to the manufacture by the defendant of said "Shuffle Alley," and that Beck disclosed to Durant "its ideas for the development of the game, 'Shuffle Alley', with the understanding that said disclosure was being made in confidence and with an expectation of remuneration if defendant should manufacture and sell games incorporating the ideas of the plaintiff hereinabove mentioned."

The complaint alleges that Beck requested a royalty of 10% of the selling price of each game, that Durant stated that 10% was too much but that a royalty of 5% would be a more reasonable figure, and "it was then and there agreed that a reasonable royalty to be fixed later * * * would be paid to the plaintiff for its ideas for the development of said game, based upon a percentage of the manufacturer's sales price of each game manufactured and sold by the defendant."

The complaint alleges that two models of "Shuffle Alley" were constructed by the defendant, turned over to Beck who placed them in location for testing purposes; that subsequently Beck made recommendations and suggestions as to their improvement and that defendant during the month of September, 1949, commenced the manufacture of said game; that defendant manufactured and sold in excess of 24,000 of such games, that on numerous occasions plaintiff requested an accounting of royalties and that "the reasonable royalty for the type of disclosure made by the plaintiff to the defendant of its idea for the game 'Shuffle Alley' is an amount equivalent to five per cent (5%) of the manufacturer's selling price."

The complaint alleges that plaintiff purchased a large number of said games of "Shuffle Alley" from the defendant for use in plaintiff's business, that such games were purchased upon terms which provided for payment of one-half of the purchase price in cash, that the remaining balance was secured by conditional sales contracts and that there was an agreement between the parties that royalties accruing to the plaintiff would be credited on the balance due under said sales contracts.

The complaint alleges that defendant caused a judgment to be entered by confession in the Municipal Court of Chicago upon the balance due under the conditional sales contracts; that defendant had threatened to repossess the games described in the conditional sales contracts and that defendant's action was for the purpose of forcing plaintiff to make an unfair and unjust settlement of the accounts existing between the parties. Further, that defendant through its agents and officers acted fraudulently and conspired together to deprive plaintiff of its rights and property and to obtain control of plaintiff's invention; that defendant "should not in equity and good conscience be permitted to wrongfully appropriate the ideas incorporated in, and the valuable property rights of the plaintiff in and to the invention of the game 'Shuffle Alley'", and that "unless the defendant is restrained by the injunction of this Court * * * this plaintiff will suffer irreparable injury and damage."

The complaint concludes, "Forasmuch, Therefore, as this plaintiff is without remedy except in a Court of Chancery," plaintiff prays that an accounting be had between the parties, that defendant be enjoined and restrained from taking possession of or instituting any action for the recovery of the games described in the conditional sales contracts, from pursuing or prosecuting any further action in connection with its judgment in the Municipal Court of Chicago and from the further manufacture and sale of the game referred to as "Shuffle Alley."

Defendant's motion to dismiss the complaint for failure to state a claim upon which relief could be granted was denied by District Judge Walter J. La Buy. In connection with such denial, Judge La Buy filed a memorandum opinion, D.C., 94 F. Supp. 612, 613, in which he stated "that no enforceable contract was made between the parties since the performance and duties of the parties are not reasonably certain", referring particularly to the allegation, "a reasonable royalty to be fixed later." Judge La Buy, however, citing Matarese v. Moore-McCormack Lines, Inc.,

2 Cir., 158 F.2d 631, 170 A.L.R. 440, a case then and still strongly relied upon by plaintiff, thought that plaintiff had stated an action upon which relief might be granted upon the theory of unjust enrichment. It was for this reason that defendant's motion to dismiss was denied.

Defendant by its answer denied the material allegations of the complaint and alleged certain matters as an affirmative defense. Subsequently and in apt time, plaintiff filed its demand for a jury trial which, upon defendant's motion, was stricken by Judge La Buy. Later, the case was assigned for hearing to Judge J. Sam Perry, another judge of the same court. When the case was called, plaintiff called the attention of Judge Perry to the previous action of Judge La Buy in striking its demand for a jury trial and renewed its motion in that respect. Thereupon, the motion was denied by Judge Perry. A trial was then had before the court without a jury, during which a number of witnesses were heard, including Beck and Durant (the latter called by plaintiff as an adverse witness). At the conclusion of plaintiff's case, the court announced that the proof failed to show plaintiff entitled to relief. Thereupon, findings of fact and conclusions of law were made and, predicated thereon, a judgment was entered dismissing with prejudice the cause of action. It is from this judgment the appeal comes to this court.

Whether plaintiff still insists that it was entitled to relief upon a contract, express or implied, is not clear from the brief and argument in this court. It is certain, however, that such a theory finds no support in Matarese v. Moore-McCormack Lines, Inc., supra, so greatly relied upon by plaintiff. In that case, similar to the instant one in some respects, the plaintiff abandoned his contract theory upon which his case was originally predicated. Referring thereto, the court stated, 158 F.2d at page 632, "During the trial plaintiff abandoned his theory and, over the objections of defendants, amended his complaint by adding a prayer for recovery of *quantum meruit* upon the theory of unjust enrichment." It was upon that theory alone that

the court affirmed a judgment in favor of the plaintiff and, as already noted, it was upon the same theory that Judge La Buy decided that plaintiff in the instant case might be entitled to relief, which resulted in his denial of the motion to dismiss the complaint.

We agree with Judge La Buy that no contract, either express or implied, upon which relief could be granted was disclosed in the complaint. The complaint failed to disclose a meeting of the minds upon the essential requisites of an agreement or contract. We need not labor this point, however, because plaintiff acceded to the ruling of Judge La Buy and tried its case before Judge Perry solely upon the premise that it was entitled to relief upon the theory of unjust enrichment. In an opening statement, counsel for plaintiff stated:

"Our theory is this: That the product of one's mind has a value as much as a table or a chair or any other piece of property, and that if the product of that mind is given to another, with the expectation of remuneration, and the other uses it to his profit, that the courts hold that the one whose product it was originally, is entitled to compensation. That is it in a nutshell."

Again, during the course of the trial, counsel for plaintiff stated:

"If Your Honor will note by the pleadings, Judge La Buy held that this matter should be tried primarily on the basis of an unjust enrichment suit and the conception of an idea and the conversion thereof to Mr. Durant, not on a contract spelled out. The important point of this whole law suit, and one of the salient points here, something Mr. Becker is trying to avoid in connection with this cause, is the prior conception by Beck of the idea."

And again, at the conclusion of the trial, counsel stated:

"What we were suing for here in the suit just ended, royalties or commissions based upon an unjust enrichment, which covered the manufacture

of a large number of these machines * * *."

In the view we take, there is no occasion to make a detailed narration of the proof offered by plaintiff or to enter a discussion of numerous criticisms directed at the trial judge, and particularly that relative to his pointed lack of faith in the credibility of Beck's testimony. We assume that plaintiff was entitled, on the motion for a judgment at the conclusion of its case, to have its evidence considered in the light most favorable to it. At the same time, we agree with the conclusion of the district judge that "if all the facts were true as presented by the plaintiff, it would nevertheless not be entitled to the relief prayed for in its complaint."

As shown by the complaint, the original idea conceived by Beck which assertedly constituted a property right comprised two elements of a coin-operated game, namely, an electrically controlled automatic scoring device and an automatic return to the player, of the puck or weight, commonly known as a "puck roll-back." This property right thus asserted appears to have dwarfed to a considerable extent during the progress of the litigation because, in argument here, plaintiff's counsel concedes that the idea originally conceived by Beck is confined entirely to the automatic puck return.

The authorities set forth a number of elements which a plaintiff is required to establish as a prerequisite to a right to obtain relief in a case of the instant character. Those elements generally are (1) that the idea disclosed must be novel, (2) that it must be made in confidence and (3) that it must be adopted and made use of by the defendant. DeFilippis v. Chrysler Corp., D.C., 53 F.Supp. 977, 980, affirmed, 2 Cir., 159 F.2d 478; Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294, 300, affirmed, 3 Cir., 106 F.2d 314; Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F.2d 345; O'Brien v. RKO Radio Pictures, Inc., D.C., 68 F.Supp. 13, 14; Plus Promotions, Inc., v. RCA Mfg. Co., Inc., D.C., 49 F. Supp. 116, 117.

Beck's own testimony demonstrates that any idea he had was hazy and uncertain

and, more, it was not original with him. He testified as to his first meeting with Durant in Chicago, "My idea when I originally started was to buy Total-Rolls and Advance-Rolls, and convert them. * * * Total-Rolls and Advance-Rolls were old games, at that time were three or four years old * * *. I told him my idea was * * * to convert them to the type of game I had in mind, to a shuffle-type bowling game." At a subsequent meeting in Milwaukee all that Beck showed Durant was "California Shuffle Pins," a game then on the market and in use. Beck admitted that he had nothing to do with the development of the electric totalizer, the electrical scoring device which was of Durant's invention. (This was one of the ideas alleged in the complaint as having been original with Beck.) He also testified with reference to this second meeting, "I didn't have a model. All I had was a puck return, which at that time didn't mean anything."

Beck admitted that the only thing he claimed to have developed was the puck return. He testified that he described to Durant how the puck return should be built, that is, by having the puck drop off the rear of the playing board into a channel and roll back by gravity to the right side, make a turn and proceed to the front of the game. Referring to this puck return, Beck admitted that he told Durant, "This has been done on Skee-Balls, and there have been very many of them built, and it has been successful. That is where I got the idea from. We have built one that words perfectly in a Total-Roll." Further, Beck after describing the puck return in Skee-Balls admitted that it was almost exactly like the puck return in plaintiff's Exhibit 1.

This Exhibit 1 was introduced in evidence and purports to embody Beck's novel idea. There were also introduced in evidence some crude drawings by Beck, made prior to his conversations with Durant. However, neither Exhibit 1 nor the drawings were shown to Durant. The District Court found, and we think appropriately:

"Any alleged disclosure made by Beck to Durant during the several conversations had between Beck and Durant were merely vague or general suggestions or hints, such as are usually made by operators as a result of their observation of commercial amusement devices or of testing games on location, and were of no novelty or specific application."

This appraisement of Beck's alleged disclosure to Durant is further borne out by the fact that defendant's engineers spent several weeks in its shop developing a game which allegedly embodies the idea which Beck claims to have originated, all of which tends to show that Durant obtained from Beck no idea in concrete and usable form. Otherwise, there would have been no occasion for weeks of experimentation in its development.

Plaintiff's asserted right to relief is bottomed upon the premise that the original idea which it disclosed to defendant was embodied in the game "Shuffle Alley" manufactured and sold by defendant. There is no contention that defendant used the idea in any other form or fashion. Between September 1 and December 10, 1949, plaintiff purchased from defendant 367 of these games at a price of $225 each. One of such games as manufactured and sold by defendant was present in the courtroom during the trial and was exhibited to this court on oral argument. For some strange and unexplained reason, this game was not introduced at the hearing. Whether such failure was intentional or through inadvertence we do not know. It is around defendant's game of "Shuffle Alley" that the controversy in the main revolves. Even though we assume, contrary to what we think, that Beck disclosed to defendant an idea in concrete form, we are of the view it would be difficult and perhaps impossible to hold that the idea was used by defendant in its game of "Shuffle Alley" when that game is not before the court. This is an added but significant reason for affirming the judgment complained of.

■ Numerous other questions are raised and discussed, but in view of what we have said we think there is no occasion to go further other than to mention plaintiff's contention that the District Court erred in denying its demand for a jury

trial under Rules 38 and 39 of the Rules of Civil Procedure, 28 U.S.C.A. We think this contention is without merit. Particularly is this so in view of the issue upon which the case went to trial before Judge Perry. As already shown, plaintiff at that time sought relief entirely upon the theory of unjust enrichment. Thus, if plaintiff had prevailed it would have been entitled only to an accounting and perhaps to an injunction, as it prayed for in its complaint. Such being the situation, plaintiff was not entitled to a jury trial as a matter·of right. Cf. Johnson v. Gardner, 9 Cir., 179 F.2d 114, 117; Bereslavsky v. Kloeb, 6 Cir., 162 F.2d 862, 864; United States v. Friedman, D.C., 89 F.Supp. 957, 961; Hirsch v. Glidden Co., D.C., 79 F.Supp. 729, 730.

Plaintiff's reliance upon Matarese v. Moore-McCormack Lines, supra, 158 F. 2d 631, suggests some further consideration. A reading of the opinion immediately discloses the wide gulf between its facts and those here. There, the plaintiff was an employee of the defendant and thus a confidential relation existed. Plaintiff was employed as a stevedore on defendant's pier and informed the latter's agent that he had something which would facilitate cargo loading and unloading which would save the defendant much money and would prevent accidents. Defendant's agent went to plaintiff's home and was shown models of devices for loading and unloading cargo which plaintiff had originated. The models were demonstrated to defendant's agent, who expressed satisfaction with them and promised plaintiff one-third of what defendant would save by their use. Plaintiff was offered and accepted a job of supervising and constructing his devices for the defendant on defendant's premises and with defendant's materials. A great number of such devices were put to use by the defendant. In brief, these were the facts upon which the court affirmed a judgment in favor of the plaintiff for an accounting upon the theory of unjust enrichment. There, contrary to here, the idea for plaintiff's device was clearly original with him, a model in concrete form was exhibited to defendant, it was constructed by the plaintiff on defendant's premises with its material and put to use by it. Furthermore, none of these facts were seriously disputed by the defendant but the main defense was that the agent with whom plaintiff dealt acted beyond the scope of his employment.

The judgment appealed from is affirmed.