**OFFICIAL AIRLINES SCHEDULE INFORMATION SERVICE, INC., et al., Appellants,**

v.

**EASTERN AIR LINES, INC., Appellee.**

No. 20507.

United States Court of Appeals
Fifth Circuit.

May 15, 1964.

Rehearing Denied July 13, 1964.

T. Paine Kelly, Jr., Wm. Terrell Hodges, of Macfarlane, Ferguson, Allison & Kelly, Tampa, Fla., for appellants.

W. Glen Harlan, E. Smythe Gambrell, William G. Bell, Jr., Gambrell, Harlan, Russell, Moye & Richardson, Atlanta, Ga., for appellee Eastern Air Lines Inc.

Before RIVES, Circuit Judge, and HUNTER, Jr., District Judge.*

HUNTER, District Judge:

This is an action by Official Airlines Schedule Information Service, Inc. (OASIS) for injunction, damages and an accounting for "unjust enrichment" arising out of a radio program of Eastern Air Lines, Inc. (Eastern) called "Flite Facts" which is broadcast regularly on the hour in Boston, New York, Washington, Charlotte, Atlanta, Tampa, Miami, New Orleans, Houston and Chicago to inform the traveling public concerning arrivals and departures of Eastern's aircraft at those cities. The relevant facts are not in serious dispute.

In the winter of 1960–1961, OASIS approached Eastern and other major air carriers with a proposal for joint airline broadcasts of flight schedule information at Boston and Tampa, with the intention of expanding the broadcasts to other airline cities. For a consideration, OASIS would assemble information from each of the airlines serving Boston—the first city to be served under OASIS' program—and would arrange for the hourly broadcast of delays and cancellations of airline flights at Boston, identifying the flights *only* by "Flight number, point of origin, stops en route, scheduled arrival time and new arrival time." Eastern expressed doubts as to the feasibility of a joint "industry" approach to such information, but at the insistence of OASIS, Eastern considered the information offered voluntarily by OASIS and eventually concluded not to participate in the program, even when OASIS offered to allow Eastern to participate without cost.

Other airlines serving Boston participated in the OASIS program; some did not. After a 90-day experimental period, OASIS announced that those who had given financial support were reluctant to continue such support.

In March and April of 1962 Eastern began its "Flite Facts" program in Boston, New York, Washington, Charlotte, Atlanta, Tampa, Miami, New Orleans, Houston and Chicago. This program was scheduled on the hour in each city and was limited to information concerning *Eastern*—arrivals and departures of Eastern's aircraft, and also advertising and publicity with respect to new services offered by Eastern.

OASIS alleges that Eastern's Flite Facts "appropriated" the OASIS "Plane Facts" idea which OASIS claims is "novel," and that Eastern's Flite Facts has caused the OASIS program to fail. OASIS seeks an injunction restraining Eastern from broadcasting Flite Facts "from any radio station in the United States", and it seeks damages resulting from the alleged "usurpation and conversion" of OASIS' allegedly "original and novel idea", together with an accounting for "unjust enrichment" resulting from the alleged "usurpation and conversion" of the "property rights" of OASIS in its "original and novel idea".

Eastern filed a motion to dismiss or for summary judgment, supported by affidavits and a counter-affidavit was filed by OASIS (R. 23–50). The record includes the correspondence between the parties and full affidavits as to all facts which either party deemed relevant and material.

The trial court granted Eastern's motion and dismissed the Complaint. We affirm.

The issue here is that of liability for the alleged appropriation of another's idea. The jurisprudence sets forth the essential elements which a plaintiff is required to establish as a prerequisite to a right to relief in a case of this character. These elements generally are: (1) the idea must be novel; (2) the disclosure of the idea must be made in con-

---

* Judge Cameron participated in the hearing of this case but died before this decision was written.

fidence, and (3) the idea must be adopted and made use of by the defendant. (Mitchell Novelty Co. v. United Mfg. Co., 7 C.A., 199 F.2d 462; DeFilippis v. Chrysler Corp., 2 C.A., 159 F.2d 478; Smoley v. New Jersey Zinc Co., 3 C.A., 106 F.2d 314; Lueddecke v. Chevrolet Motor Co., 8 C.A., 70 F.2d 345). These requisite elements of novelty, confidential relationship and use are all absent here.

■ The central concept in the OASIS idea was that radio and other mass communication media be employed to give to the public flight operations information concerning all airlines serving a particular community. Neither the briefs of counsel nor our independent research has provided us with decided cases or textual discussion of sufficient analogy to be employed as precise precedents or authority on the issue of novelty; but such a conception is, in our judgment, not sufficiently novel so as to give OASIS a monopoly on broadcasting such flight information throughout the United States. Accordingly, we hold as a matter of law that the idea of using radio or other mass communication media to broadcast flight information does not constitute such an original intellectual or ingenious concept as to be entitled to protection as a property right.

We next turn to the record before us and find that nowhere is there any suggestion that the OASIS idea was communicated to Eastern or any of the other airlines in confidence, or with an advance contract or understanding concerning the use of that idea. There is no factual problem concerning the question of confidential relationship. The problem here is whether one person, by his gratuitous and unilateral act, may impose upon another a confidential relationship. That he may not is clear. Lueddecke v. Chevrolet Motor Co., 8 C.A., 70 F.2d 345.

We have assumed in what we have said with respect to novelty and confidential relationship that Eastern did, in fact, adopt and use the OASIS idea. We would not, however, be misunderstood

on this point. The assumption was made to test plaintiff's cause of action upon the hypothesis most favorable to them. So tested, it nevertheless fails. Actually, however, the record is clear that Eastern did not adopt and use the OASIS idea. OASIS briefs its case as if it had offered to sell Eastern an idea which Eastern later used in its own business. This is just not true. All OASIS tried to do was to sell Eastern a service. The OASIS idea was a joint industry approach. The idea was to assemble flight information furnished by Eastern and other lines and then arrange to have that information broadcast to the public. Whatever rights OASIS might have had to its idea, it had no right to pre-empt the field of radio broadcasting so as to prevent Eastern from using radio for regular broadcasts concerning the airline's own individual services. That is precisely what Eastern did.

If OASIS had offered to sell Eastern the idea of producing a joint airline radio broadcast and if Eastern had subsequently produced such a broadcast we would have a different question

Judgment affirmed.

RIVES, Circuit Judge (concurring specially):

I concur in the result, and in much of Judge Hunter's able opinion. Approaching the case differently, however, I concur specially.

It seems to me that we must first decide what law is to be applied. Jurisdiction being based upon diversity of citizenship, the conflict of laws rules of the forum state must be utilized.[1] Here, the forum state is Florida, but there is no indication what conflict of laws rule Florida would apply to a cause of action based on the misappropriation of an idea. There are three states which have had significant contacts with the subject matter involved in this suit: (1) Florida, the state in which most of the correspondence by OASIS was apparently written, the principal place of business of

1. Klaxon Co. v. Stentor Elec. Mfg. Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477.

OASIS, and the state in which one of OASIS's two corporate entities is incorporated; (2) New York, the principal place of business of Eastern and the state from or to which most of Eastern's correspondence was mailed; (3) Massachusetts,[2] the only state in which "Plane Facts" and "Flite Facts" were concurrently aired, the state of incorporation of OASIS's other corporate entity, and the state to which Eastern mailed most of its correspondence intended for OASIS.[3]

The exact nature of any liability for the misappropriation of an unsolicited idea is not clear. Most courts speak in terms of implied-in-fact or quasi-contract,[4] although other theories are frequently utilized.[5] The Florida courts have never passed on this question. The most significant contact in this type of suit would seem to be the place where the idea was in fact appropriated.[6] New York appears to be the place where the decisions not to use "Plane Facts" and to use "Flite Facts" were made. True, the direct conflict between the two programs occurred in Boston, although OASIS alleges that the use of "Flite Facts" in other cities prevented the planned expansion of "Plane Facts" to some of those cities. All things considered, New York has the more significant contacts so that Florida courts seemingly would apply New York law.

New York allows recovery for the misappropriation of an unsolicited idea on the basis of implied-in-fact or quasi-contract,[7] provided, however, that the idea is novel[8] and presented in concrete form.[9] In the instant case concreteness is not questioned. Nevertheless, plaintiff must prove that those aspects of "Plane Facts" which Eastern allegedly appropriated were novel. The federal courts have treated the issue of novelty as a fact question, normally to be resolv-

---

2. All of the Massachusetts contacts occurred in Boston.

3. In addition, a few of Eastern's letters were sent by its Boston office.

4. See, e. g., Matarese v. Moore-McCormack Lines, 2 Cir. 1946, 158 F.2d 631, 634, 170 A.L.R. 440 (applying New York law). However, traces of tort, copyright, and unfair competition law seem to have found their way into the "quasi-contract" approach.

5. These include common-law copyright, breach of a fiduciary relationship, and unfair competition. See Note, 28 Albany L. Rev. 108, 108 n. 4 (1964).

6. Even if the cause of action is viewed as being founded solely on quasi-contract, the result is probably the same. If it can be said that there was a pre-existing relationship, governed by New York law, prior to the enrichment, then Restatement (Second), Conflict of Laws § 354 (k) (1) (Tent.Draft No. 6 1961) would apply New York law. But see Van Rensselaer v. General Motors Corp., E.D.Mich. 1962, 223 F.Supp. 323, 329, aff'd, 324 F. 2d 354 (6 Cir. 1963). In either case, if the benefit or enrichment was the receipt of the idea itself (in New York), rather than the beneficial use of the idea in Boston and elsewhere, New York law would apply. See Restatement (Second), Conflict of Laws § 354(k) (2) (Tent.Draft No. 6 1961); Van Rensselaer v. General Motors Corp., supra.

7. See, e. g., Healey v. R. H. Macy & Co., 1938, 277 N.Y. 681, 14 N.E.2d 388; Cole v. Phillips H. Lord, Inc., 1941, 262 App. Div. 116, 28 N.Y.S.2d 404; Robbins v. Frank Cooper Associates, 1963, 19 A.D. 2d 242, 241 N.Y.S.2d 259; Matarese v. Moore-McCormack Lines, supra n. 4; Galanis v. Procter & Gamble Corp., S.D. N.Y.1957, 153 F.Supp. 34. But cf., Gromback Productions, Inc. v. Waring, 1944, 293 N.Y. 609, 59 N.E.2d 425; Carneval v. William Morris Agency, Sup. Ct.1953, 124 N.Y.S.2d 319, aff'd, 284 App. Div. 1041, 137 N.Y.S.2d 612 (1954). A few cases seem to distinguish between literary ideas and business ideas. See Oxenhandler v. Dime Savings Bank of Brooklyn, Sup.Ct.1962, 33 Misc.2d 626, 227 N.Y.S.2d 642; O'Brien v. RKO Radio Pictures, Inc., S.D.N.Y.1946, 68 F.Supp. 13. The type of the idea, however, seems to have little effect on the outcome of the suit.

8. See, e. g., Bristol v. Equitable Life Assur. Soc'y, 1892, 132 N.Y. 264, 30 N.E. 506; Oxenhandler v. Dime Savings Bank of Brooklyn, supra n. 7.

9. See, e. g., Williamson v. New York Central R.R., 1939, 258 App.Div. 226, 16 N.Y.S.2d 217; Plus Promotions, Inc. v. RCA Mfg. Co., S.D.N.Y.1943, 49 F. Supp. 116.

**676**

ed by the jury.[10] Eastern's affidavit admits that through "Flite Facts" "Eastern was the first airline to provide such information every hour on the hour on a radio station." It seems to me that whether this concept, never before used in this industry, was novel presented a question more properly left to a jury.

OASIS concedes that after "Plane Facts" had been disclosed to Eastern, but prior to Eastern's inauguration of "Flite Facts," OASIS began broadcasting its program on a Boston radio station. Eastern asserts that this was a general publication which prevents any recovery by OASIS.[11] OASIS claims that its recovery does not fail unless it intended the publication to be an abandonment, citing Stanley v. Columbia Broadcasting System, Cal.App.1948, 192 P.2d 495, 507–508, aff'd en banc, 35 Cal. 2d 653, 221 P.2d 73 (1949). In Stanley, however, there was a single performance of the program before a limited audience so as to give prospective purchasers a preview of what the suggested program would be like. In the instant case, "Plane Facts" was broadcasted continuously for anyone within listening distance of Boston to hear. Eastern, or any other airline, could have been apprized of the novel features of "Plane Facts" by merely listening to the Boston radio station, even without having been approached by OASIS. Under these circumstances, OASIS cannot have a cause of action for the misappropriation of its idea.

Another unusual facet of this case is that OASIS eventually did not propose to sell "Plane Facts" to Eastern, but only to obtain Eastern's participation therein. Whether there can be quasi-contractual recovery in such a situation is a question which need not be reached in view of the publication of plaintiff's idea.

I concur in the affirmance of the judgment.

## On Petition for Rehearing

Before RIVES, Circuit Judge, and HUNTER, Jr., District Judge.*

HUNTER, District Judge:

Upon considering the petition for rehearing filed by appellant, it is ordered and decreed that said petition be and it hereby is denied.

In passing it is affirmatively stated that the writer concurs in Judge Rives' basis for affirmance.

10. See Hamilton Nat. Bank v. Belt, 1953, 93 U.S.App.D.C. 168, 210 F.2d 706; Galanis v. Procter & Gamble Corp., S.D. N.Y.1957, 153 F.Supp. 34.

11. See Shanahan v. Macco Const. Co., Dist.Ct.App.1964, 36 Cal.Rptr. 584, 591 (Alternative holding); cf. Bristol v. Equitable Life Assur. Soc'y, 1892, 132 N.Y. 264, 30 N.E. 506.

* Judge Cameron, the third Judge constituting the Court which originally heard this case, died prior to the filing of the original opinion. He participated both in the hearing and the decision of that original opinion.