**Irving FISKE, Plaintiff,**

v.

**AMERICAN CHARACTER, INC.,**
**Defendant.**

**No. 62 C 857.**

United States District Court
E. D. New York.

May 11, 1966.

Armand E. Lackenbach, New York City, for plaintiff.

Maxwell James, Harold James, New York City, James & Franklin, New York City, of counsel, for defendant.

### MEMORANDUM

DOOLING, District Judge.

Plaintiff designed a doll in which was placed a diminutive transistorized tape recorder which could record and repeat a short human speech. The tape recorder was arranged (by using an endless-belt loop of reusable magnetic tape) to operate in a cyclical sequence of recording a short message, playing it back, and erasing it; the cycle of operations could then be repeated with a fresh message. The maximum length of the message that could be recorded, and the timing of its playback, were, necessarily, determined by the length of the looped tape, since, when each bit of message impressed on the tape reached the pick-up element, it was played and then erased, and the tape

moved on to the recording element ready to receive a fresh message. Plaintiff's "echo doll" was so wired that a single on and off switch controlled its operation. It was also so arranged that when it was playing back its message, an electromagnetic cut-out, actuated by the signal strength in the playback circuit, precluded simultaneous recording.

Plaintiff exhibited a prototype of his doll to defendant. Defendant was interested. It took a 90 day option on the doll mechanism and patents, paying $1,000, which was to be applied against royalties if the option was exercised. No terms of purchase, or of royalty payments, seem ever to have been discussed. The prototype doll was, it is agreed, not developed to the point of commercial marketability, and, although some attention was given to devising an economical circuitry for its tape recorder and to locating a cheap Japanese source of supply, the development effort was desultory and wholly unproductive. The option lapsed, and defendant returned the doll at the end of the 90 days.

Wholly independently, another doll maker, De Luxe Reading, devised an echo doll that also involved use of an endless belt of tape in a tape recorder. It differed from plaintiff's in that it used a three-way switch with "record," "off" and "playback" positions. Unlike plaintiff's doll, a message recorded on the De Luxe Reading tape would be played over repeatedly if the switch was set at "playback," and repetition would continue until the switch was turned to or through "off" position. The De Luxe Reading tape recorder could be kept in "record" position too for an indefinite length of time, but, as the process of recording involved erasing any earlier record on the same tape segment, the maximum message length was determined by the length of the endless belt of tape. However, the recording process would, although uselessly, continue indefinitely on the De Luxe Reading recorder, whereas in plaintiff's doll the electromagnetic cut-out compelled the mechanism to operate automatically in alternating "play-back" and "record" sequences each equal to the length of the tape belt.

It was somewhat over a month after defendant returned plaintiff's doll to him that De Luxe Reading approached defendant and asked defendant to market the De Luxe Reading doll, "Little Miss Echo." The doll was then commercially developed except that defendant contributed to it an improved head and dress. Defendant undertook the distribution and promoted the doll with some success.

■ Plaintiff sues in two counts. The count for patent infringement may be disposed of in a word. The De Luxe Reading doll plainly does not infringe. It lacks the two most significant elements of plaintiff's claims—the automatic sequence of record, playback and erase in a time cycle predetermined by the length of the endless belt of tape, and the electromagnetic cut-out that utilizes the playback signal to actuate the mechanism that de-energizes the recording circuit. The evidence, however, is not complete enough to make it appropriate to attempt to pass in this case on the validity of plaintiff's patent.

Plaintiff claims in a separate count that it was a breach of trust and a violation of confidence for defendant to proceed as it did to market the De Luxe Reading doll, arguing that to do so represented a use, a misappropriation, of plaintiff's echo doll. There is no doubt that plaintiff disclosed his doll completely to defendant and there is no doubt that he did so in circumstances such that defendant could not use what was peculiarly plaintiff's in the disclosure without paying him for it. The critical questions are what was plaintiff's in his disclosure, and what was the species of restriction upon defendant's trade freedom that arose out of the circumstances of disclosure.

It was not the doll that was the disclosure and plaintiff does not say that it was the combination of doll and tape recorder, the idea, that is, of putting a tape recorder inside a doll. It is intrinsically difficult to define a plaintiff's disclosure

in such a case as this, in which old and new are intimately mixed, and plaintiff's first effort to make it precise (Trial Brief, pp. 6–7) must be taken as indicative rather than limiting. Plaintiff then emphasized that (a) the doll could record a speech and play it back after a predetermined interval by the simple expedient of operating a single switch; (b) it was unlike a conventional tape recorder that requires plural switch means to operate in repeated cycles of "record," "rewind," "playback," and repeat, in that the doll's single-switch alternation between off and on operated the whole sequence; (c) the doll embodied circuit selection means that, at the end of a predetermined interval after recording started, switched off the "record" circuit and allowed "playback" to take place (without re-recording the "playback" message on the tape); and (d) that the simplicity of the switch means was suited especially to operation by a child. In the Brief after Trial (p. 6) plaintiff puts the real import of the description on the novelty of introducing circuit selection means which, after a time interval has elapsed, switch the circuit from a "record" to a "playback" position, whether automatically or manually, without having the doll record its own voice. Plaintiff notes again that it is common to the two dolls that their tape movement is unidirectional and that they eliminate the conventional tape recorder "record," "rewind," "playback" and repeat cycles, each step being randomly chosen and not predetermined.

The difficulty is that the two dolls are as different as their common use of an endless belt of tape will permit. They function alike only in their freedom from the rewind complication and in their both being limited to the recording and playing back of messages the length of which is predetermined by the length of the endless belt of tape and the speed of the tape transport reels. Defendant's ingenuity is in combining the endless tape and a gang-switch so that the transport and electronic components can be turned on and off together between repetitious "playback," "off" and repetitious "record" positions. Plaintiff's ingenuity united the endless tape with an electromagnetic cut-out in such way that an invariable, repetitious sequence of "record," "playback" and "erase" was the only alternative to "off."

It appears not to be claimed that disclosure of the combination of an endless tape with the earlier combination of a tape recorder in a doll would be a sufficient disclosure to mark as an unfair appropriation defendant's adoption of the De Luxe Reading doll embodying those features. Yet as to the rest of the two dolls, they present diametrically diverse solutions of the problem of controlling the operation of a tape recorder with an endless tape. The solutions are diverse and the performances different. Taking key elements in plaintiff's system, "playback" at a predetermined interval after "record," and automatic preclusion of recording whenever "playback" is functioning: neither is present in defendant's doll. Both key elements are integral in plaintiff's commitment to an invariable sequence of "record," "playback" and "erase" timed to cyclical recurrence by the length and speed of the tape. Defendant's system is as conventional an adaptation of standard tape recorder mechanics as an endless tape will permit. At one setting, the machine records until it runs out of tape (never, since the tape is endless, but useless, since each recording obliterates its predecessor); at the opposite setting, the machine plays back until it runs out of tape (never, since the tape is endless, but the same message is repeated).

■ There was, then, no disclosure of anything that plaintiff can or does claim as peculiarly his. Even if it were assumed that to some ill-defined extent a breach of confidence may impose a duty to account for the profits from what, apart from the confidence attending its disclosure, could not be supposed to be meaningfully a "property" of the one disclosing it (Cf. Franke v. Wiltschek, 2d Cir.1953, 209 F.2d 493), there is not in this case any breach of con-

fidence. The parties dealt at arms length. A confidential transaction can, indeed, arise without use of any special formula of words, but it does not arise out of mere default of expressions negating it; it must always arise out of facts, events, relations or verbal acts; it is a positive legal relation and rests on positive matter or it does not exist. Disclosure alone is not enough to make out a confidential relation when the parties are prospective vendor and vendee and dealing in terms of a device believed to be patentable, and, from the obviousness of its structure, incapable of being marketed without total disclosure of its novel elements. It may be that to the extent that there is use of what was theretofore secret that is disclosed in such a context, there arises a duty to account for that use before the date when a patent issues to the party making the disclosure (Hoeltke v. C. M. Kemp Mfg. Co., 4th Cir.1936, 80 F.2d 912), but plaintiff here needs to show far more. Plaintiff needs to show that defendant was, because of its dealing with plaintiff, debarred from using the non-infringing De Luxe Reading doll, that it had lost its right to take an interest in a directly competitive product. But such a drastic consequence cannot follow from so slight a relation as is here presented. Defendant, simply, was shown and rejected plaintiff's doll. It did not then, making profit from that disclosure, join in devising the De Luxe Reading doll and, for that reason, come under a duty to account. Rather, it was independently offered another and wholly unrelated doll that it preferred and accepted; defendant, certainly, contributed modestly to the De Luxe Reading doll, but what it contributed was unrelated to the "echo" aspect of the doll and was from its own stock of ideas related to dolls, and its contribution was not anything that it had derived in any way from plaintiff. Speedry Chemical Products, Inc. v. Carter's Ink Co., 2d Cir.1962, 306 F.2d 328, is, therefore, dispositive of the present case. Cf. Official Airlines Sched. Inf. Serv. v. Eastern Air Lines, Inc., 5th Cir.1964, 333 F. 2d 672.

Findings of fact have been separately made.

Judgment must be for defendant.