[No. 25965.   Department One.   April 3, 1936.]

How J. Ryan & Associates, Inc., *Respondent*, v.
Century Brewing Association, *Appellant*. [1]

*Wright, Jones & Bronson,* for appellant.

*Ballinger, Hutson & Boldt,* for respondent.

Tolman, J.—Respondent, as plaintiff, brought this
action to recover for services rendered.  A trial was
had to a jury, which returned a verdict for the plain-
tiff.  Judgment was entered on the verdict, and the
defendant has appealed therefrom.

[1]Reported in 55 P. (2d) 1053.

The respondent's theory, as revealed by the complaint upon which the case was tried, the evidence offered and received and the instructions requested and given, is briefly outlined in the following:

Respondent, a corporation, is an advertising agency offering its services to the public generally for compensation. It was invited, in September, 1933, to submit to the appellant, then about to begin the extensive manufacture, distribution and sale of beer, suggestions for an advertising program suitable for the introduction of the appellant's product and such as, by continued use, would best create a satisfactory market for the new beer. Pursuant to this invitation, the respondent conceived, prepared, illustrated and submitted various ideas for advertising the appellant's product, among them being the slogan or phrase "The Beer of the Century." This phrase, it is claimed, has a double meaning and a double value, in that the beer so advertised would be the beer of the Century Brewing Association, and thus always be identified as its product, and likewise the phrase would carry the meaning that the beer so advertised was the best, the choicest, and the one and only superexcellent beer known to the twentieth century. Respondent, of course, knew that other advertising agencies had received like invitations, and its purpose in submitting suggestions was to obtain regular employment in devising and handling appellant's advertising campaign, probably on the usual commission basis.

Respondent was not so employed and was notified to that effect, but shortly thereafter, through another advertising agency which was employed, the appellant began to use the phrase "The Beer of the Century" in an extensive and comprehensive campaign, which use continued, apparently with results satisfactory to the appellant, up to the time of the trial below. The

jury awarded the respondent $7,500 for its services in conceiving the idea and bringing it to the attention of the appellant, which is but a fraction of the amount demanded in the prayer for judgment.

The appellant's main defense in this court is apparently based upon the theory that the law is clearly to the effect that there is no property right in any mental conception or idea once it has been disclosed and made public, and that, after disclosure, such an idea may be adopted and used by anyone without fear of liability to the originator. Therefore, it is contended, this action must be considered and construed to be an attempt to establish and maintain a property right in the phrase originated by the respondent after it had extinguished its property right by disclosing and making public its idea.

The amended complaint, in the form in which it stood when the case went to trial, does not permit of such a construction. As we read the amended complaint, amended by striking therefrom, it states a cause of action for services based upon a *quantum meruit* in form and substance similar to the common law action of assumpsit. No other issue was suggested or presented, and, by the instructions given, the jury was limited to the issue of whether or not the services had been rendered and accepted and, if so, the value thereof.

The jury, from the evidence before it, had a right to find that the respondent first conceived the thought and produced the phrase "The Beer of the Century;" that it made a limited disclosure only, and that to the appellant alone under an express warning that the adoption or use by others was forbidden unless by special arrangement with the respondent; that appellant disregarded the warning and, without the consent of the respondent, did adopt and use the phrase

very extensively and thereby, having accepted the very substantial service rendered to it by the respondent, impliedly agreed to pay therefor the reasonable value.

It must be admitted that, in all of the cases cited by both sides, the property right in the thing conceived or produced was the basis upon which recovery was sought or permitted, and that no case has been cited in which recovery was sought strictly upon the basis of services rendered, except, perhaps, the case of *Liggett & Meyer Tobacco Co. v. Meyer,* 194 N. E. (Ind.) 206, and even there the property right was discussed by the court and probably had its due weight. In that case, the originator of the idea sent a full description of it to the tobacco company, saying, in effect, that, if the idea had merit, he would expect payment in a reasonable amount for having conceived and suggested it. The tobacco company accepted and used the idea, but made no payment to the originator. Suit was brought. The complaint setting up the facts was demurred to, and the appellate court of Indiana, in discussing the sufficiency of the complaint, said:

"Enough have been presented to call in question the sufficiency of the complaint to show an offer and acceptance; whether or not the appellee had any property right in the idea or scheme as it was offered by him to the appellant; whether or not the idea or scheme was merchantable; and whether or not the complaint sufficiently alleges an appropriation by the appellant of a property right owned by the appellee under such circumstances as would raise an obligation to pay for same. The complaint does not allege any express promise on the part of the appellant to pay the appellee for the idea or scheme. We think each paragraph of the complaint sufficient to withstand the demurrers addressed thereto. Certainly the thing offered the appellee must be such as that he has a property right therein which he can sell, and certainly there must be

an offer and acceptance, and, in the absence of an express agreement to pay, there must be alleged such a use of the property right of the appellee by the appellant as would raise an obligation to pay for the same. We think the complaint entirely sufficient in these respects. This is a common-law action. The rules of the common law are continually changing and expanding with the progress of the society in which it prevails. It does not lag behind, but adapts itself to the conditions of the present so that the ends of justice may be reached. While we recognize that an abstract idea as such may not be the subject of a property right, yet, when it takes upon itself the concrete form which we find in the instant case, it is our opinion that it then becomes a property right subject to sale. Of course, it must be something novel and new; in other words, one cannot claim any right in the multiplication table.''

So far as the appellant is concerned, we see no difference between a suit such as this for services rendered and a suit based upon the originator's property right in his own idea.

The value of the property right or the value of the services each depend upon the value of the idea to the user, and evidence as to the extent of the use and the volume of sales would be admissible in either case. Again, the respondent being the originator of the idea, and it being a novel one in which it had a property right, and the disclosure being to the appellant alone and being strictly limited and coupled with a warning that a violation of its property right therein would subject the violator to liability, there was no such disclosure as would, under the law, destroy respondent's property right in its idea. If it were held otherwise, the mere offer to sell would destroy the thing offered.

The appellant requested a series of instructions which were intended to limit the services for which recovery could be had to the brief, perhaps momentary, act of conceiving the idea and writing it out, and ex-

cluding entirely the fruits, if any, or the value of the service to the appellant.

We think these requests were properly denied. The service as pleaded and as proved was a professional service. There entered into it years of training necessary to create the skill requisite. It does not differ in kind or quality from the professional services of a doctor or a lawyer, the value of which depends, in part, upon the results obtained. The value of the service to the appellant was the proper basis for fixing the amount of the fee. The amount fixed was well within the testimony.

Many of the errors assigned have not been directly mentioned or discussed, but all have been considered, and what we have said answers, directly or indirectly, every point urged by the appellant.

Finding no error, the judgment is affirmed.

MILLARD, C. J., MITCHELL, GERAGHTY, and STEINERT, JJ., concur.