The bill of complaint shows that complainant Carver invented a ventilating blackout screen adapted particularly for portholes on ships; that he has applied for a patent and has contracted to turn over to his co-complainant, the Smith Company, his right, title and interest in the invention and in such patent as may issue thereon. Complainants allege that this invention is a trade secret and that the defendants, Herman Harr and Electric Fixture Manufacturing Company, *Page 208 
learned the secret under circumstances which makes it inequitable for them to use it. The bill prays that the defendants be enjoined from making or selling blackout screens embodying the invention and from making any use of their knowledge of it and from imparting the knowledge to other persons. Complainants now move for a restraint pending final hearing.
The novelty of the invention does not lie in the process by which the screens are made or in any hidden quality of the materials used but only in the design of the screen, the arrangement of the several parts. It follows that anyone skilled in such matters who takes the trouble to examine one of the screens carefully, immediately obtains full knowledge of the invention.
The bill shows that last May complainant Carver contracted to furnish 165 of his screens to Rudmond Scofield, a marine equipment corporation, and that his co-complainant, the Smith Company, has also entered into contracts with the United States Navy and with private ship builders to supply the said blackout screens. In the absence of an allegation to the contrary, I must assume that the invention was disclosed to the purchasers. The bill does not show that deliveries on these contracts have not been made; if they have been, the design of the screens is common knowledge in the ship building and equipment industry.
The defendant Harr was employed last spring as plant superintendent of a corporation in which complainant Carver was largely interested. The corporation did not make the screens and had nothing to do with them. While so employed, Harr learned the details of the invention "through the confidential relationship then existing between him and the complainant Carver." Thus the bill characterizes the relationship, but it shows no facts which justify the adjective, confidential. Certainly Harr was not given the information for use in performing his duties as plant superintendent, since his employer did not make the screens. My inference, from the vague language of the bill, is that Carver discussed his invention with Harr, as a matter of common interest. No pledge of secrecy was asked or given. In May, *Page 209 
1942, Carver engaged the defendant Electric Fixture Manufacturing Company to assemble screens for delivery to Rudmond Scofield, and in order to enable the company to assemble them, gave to it drawings of the invention. Again, there was no request or promise to keep the information secret. On July 10th, 1942, the parties had a dispute and defendant company informed complainants it would make and sell screens on its own account. The bill was filed August 11th — three months after the Rudmond Scofield contract.
In order for complainants to prevail, a substantial element of secrecy must exist so that, except by the use of improper means, third parties would have difficulty in acquiring the information needful for making the screens. Matters which are completely disclosed by the goods themselves are not secret after the goods are put on the market. 4 Restatement Torts 5. Trade secrets are not given protection against all the world, but only against one who has learned the secret by improper means or by virtue of a confidential relation. In this sense a confidential relation is one which gives rise to a duty not to use or divulge the secret to the detriment of the owner. 28 Am. Jur. 304. It is questionable whether defendants were not at liberty to use for their own benefit their knowledge of the screen design immediately they were given it. In the absence of agreement, there must be a strong case before the court will enjoin the use of information honestly obtained. Haut v. Rossback, 128 N.J. Eq. 77.
There is authority for denying that the relation between the owner of a machine design and the contractor who builds the machine, is confidential. King v. Gannon (Mass.),158 N.E. Rep. 346; 54 A.L.R. 1215.
If defendants were originally under an implied obligation not to use complainants' invention for their own purposes, it was an obligation which ended when complainants, in seeking contracts, or by making deliveries, disclosed the design of their screens to a considerable number of persons. The normal result of disclosure is competition; the defendants are free to join in the scramble for the business.
 Order to show cause discharged. *Page 210