LAUGHLIN FILTER CORPORATION *vs.* BIRD MACHINE
COMPANY.

Norfolk. December 3, 1945. — March 6, 1946

Present: FIELD, C.J., LUMMUS, RONAN, & SPALDING, JJ.

*Contract,* License contract, Construction. *Fiduciary. Equity Pleading and Practice,* Bill, Demurrer. *Words,* "Confidential."

After the termination of a contract licensing the manufacture and sale of certain machines, the former licensor could not maintain a suit in equity against the former licensee to enjoin the defendant from using in the manufacture of similar machines certain alleged "confidential" information which the plaintiff had furnished to the defendant pursuant to a requirement of the contract, where nothing in the contract showed that the information so furnished was received by the defendant upon any trust or in confidence or that use of it by the defendant was to be limited to the period and purposes of the license.

An allegation in a bill in equity that certain information furnished by the plaintiff to the defendant was "confidential" could not be taken as true on demurrer since it was a mere conclusion of fact and was not supported by the terms of a contract between the parties relied on by the plaintiff and set out in the bill or by any of the particular facts alleged in the bill.

BILL IN EQUITY, filed in the Superior Court on October 27, 1942.

A demurrer was heard by *Williams,* J.

*A. S. Allen,* for the plaintiff, submitted a brief.

*H. S. Davis,* (*E. H. Kent* with him,) for the defendant.

LUMMUS, J. This is an appeal by the plaintiff from an interlocutory decree sustaining a demurrer to the bill, and from the consequent final decree dismissing the bill with costs.

The case made by the bill is as follows. From the year 1925 the plaintiff has been the only manufacturer of two types of centrifugal machines of superior design intended to separate solids from liquids. These were originated by the plaintiff and were mechanically intricate and difficult to imitate. The plaintiff, on August 24, 1932, granted the

defendant an exclusive license to make and sell machines "under the inventions covered by" certain enumerated patents and under future patents that the plaintiff might acquire. The license was to continue until the expiration of all said patents. The contract of license required the plaintiff to furnish to the defendant "any and all manufacturing data, engineering information and drawings which it has or may have relating to the said inventions." If the royalties should be less than a certain minimum for any certain period, the plaintiff reserved the right to cancel the license. The defendant was required to mark every machine as patented, with the number or numbers of the patents embodied therein. The contract provided that the defendant should not "during the term of this agreement dispute the validity of any patent covered hereby."

It appeared that in 1933 a dispute arose as to whether any of the patents was actually embodied in the machines made under the license. Apparently the plaintiff did not care to go into that question, for its bill places no reliance on any patent, but proceeds on grounds that are relied on independently of any patent.

The bill describes the "information" furnished by the plaintiff to the defendant, as provided for by the contract, as "confidential" information. It alleges that the defendant used that information, made machines, and paid royalties on them to the plaintiff. As of May 24, 1937, the plaintiff terminated the license under a reserved power in the contract.

The bill alleges that thereafter the defendant continued and purposes still to continue to make similar machines, employing the "confidential" information furnished it by the plaintiff "solely for the purpose" of enabling the defendant to make machines under the license during the term thereof, and not otherwise, whereby the plaintiff has lost and will lose business and profits. The bill prays for an injunction and an accounting of profits.

The plaintiff contends that the engineering data and similar "confidential" information that it gave the defendant resemble a secret formula such as was dealt with

in *Peabody* v. *Norfolk*, 98 Mass. 452, of which it was said in *Chadwick* v. *Covell*, 151 Mass. 190, 191, that the discoverer "had no exclusive right to the use of his formulas. His only right was to prevent any one from obtaining or using them through a breach of trust or contract. Any one who came honestly to the knowledge of them could use them." In *Barett* v. *Goodwin*, 314 Mass. 279, it was held that an unpatented article might be copied, provided there was no attempt to palm off goods made by one maker as goods made by another. This rule was again declared in *Eno* v. *Prime Manuf. Co.* 314 Mass. 686, 701. In *Bristol* v. *Equitable Life Assurance Society*, 132 N. Y. 264, 267, it was said, "Without denying that there may be property in an idea, or trade secret or system, it is obvious that its originator or proprietor must himself protect it from escape or disclosure. If it cannot be sold or negotiated or used without a disclosure, it would seem proper that some contract should guard or regulate the disclosure, otherwise it must follow the law of ideas and become the acquisition of whoever receives it." See also *Grombach Productions, Inc.* v. *Waring*, 293 N. Y. 609; *Carver* v. *Harr*, 132 N. J. Eq. 207.

The written contract of license is an elaborate document that evidently was intended to express the whole contract between the parties. It leaves no room for the implication of a provision that the information that the plaintiff was to furnish to the defendant was to be received upon any trust or confidence not shown by the terms of the written contract, or was not to be used except during the life of the license and for the purposes of the license. *Kerwin* v. *Donaghy*, 317 Mass. 559, 567, 568, and cases cited. Nothing in the written contract indicates any such trust or confidence or implied contract. The plaintiff relied rather on certain specified patents, and upon the contract of the defendant not to dispute the validity of any of those patents "during the term of this agreement." If the plaintiff actually held, as it claimed to hold, patents covering the machines, it had no need to put the defendant under any obligation of trust or confidence, and did not do so by the contract. If the

plaintiff considered that a confidential relationship was created, that had to be expressed or otherwise brought to the attention of the defendant in order to bind the latter. *Sallinger* v. *Conrad & Co. Inc.* 242 Mass. 58. *Woolley's Laundry, Inc.* v. *Silva,* 304 Mass. 383. There is nothing inherently confidential in the relationship between a licensor and a licensee under a patent.

The bill speaks of the information, which the contract required the plaintiff to give the defendant, as "confidential" information. As has been shown, that characterization finds no support in the contract itself. How the information became "confidential," or what statements or contracts are relied upon by the plaintiff to make it "confidential," does not appear from the bill. Neither does it appear in what sense the information is regarded by the plaintiff as "confidential." In *Bristol* v. *Equitable Life Assurance Society,* 132 N. Y. 264, 267, it was said, "The allegation of the complaint that the plaintiff disclosed the system in confidence to the defendant is vague. It does not necessarily mean that the defendant agreed not to use it; it may mean something else." The allegation in the present bill might mean simply that the plaintiff was not disclosing the information to the public, and expected the defendant not to disclose it.

On a demurrer, allegations or conclusions of law are not taken as true (*Jones* v. *Dow,* 137 Mass. 119), and neither are conclusions of fact unless they are supported by the particular facts alleged. *United Shoe Machinery Corp.* v. *Gale Shoe Manuf. Co.* 314 Mass. 142, 145. *Foster* v. *Shubert Holding Co.* 316 Mass. 470, 474. The vague adjective "confidential," expressive at most of a conclusion not supported in this case by the particular facts alleged, does not constitute by implication an allegation of some set of subsidiary facts that would support the conclusion for which the plaintiff contends. Only in judicial decisions, and not in pleadings, can the foundation be assumed or inferred from the superstructure. *Olsen* v. *Olsen,* 294 Mass. 507, 509. *Birnbaum* v. *Pamoukis,* 301 Mass. 559. *Stern* v. *Lieberman,* 307 Mass. 77, 81, 82. *Collins* v. *Commonwealth,* 315 Mass.

167, 170.  *Matter of Loeb,* 315 Mass. 191, 196.  *First National Stores Inc.* v. *H. P. Welch Co.* 316 Mass. 147, 150.  *Turner* v. *Morson,* 316 Mass. 678, 680.

> *Interlocutory decree sustaining demurrer affirmed.*
>
> *Final decree affirmed with costs.*