**HAMILTON NAT. BANK**

v.

**BELT.**

No. 11742.

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 12, 1953.

Decided Dec. 3, 1953.

Mr. Harry L. Ryan, Jr., Washington, D. C., with whom Messrs. Roger J. Whiteford and Duane G. Derrick, Washington, D. C., were on the brief, for appellant.

Mr. James T. Barbour, Jr., Washington, D. C., with whom Mr. Thomas H. Patterson, Washington, D. C., was on the brief, for appellee.

Before CLARK, BAZELON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The appellee, Lloyd K. Belt, sued the appellant, Hamilton National Bank, for damages incurred by reason of the Bank's appropriation of a type of radio program which he claimed to have originated and made known to the Bank. The jury returned a money verdict for Mr. Belt and the Bank appeals from the ensuing judgment.

Expressly reserving the right to negotiate with any school, radio station, or sponsor, as well as all other rights, Mr. Belt by letter of October 21, 1948, to the Assistant Superintendent of Public Schools set forth a plan to select student talent by holding auditions in the high schools and with talent thus selected to put on half-hour weekly broadcasts. Each show would be presented first to the student body as an assembly, recorded, and the recording broadcast in the evening. A school atmosphere would be retained by referring to the show as a class, to the acts as class assignments, and to the action as class recitations. A different school would be featured each week. The program would include several pieces by the glee club in addition to the talent. The actual content of each show, with the exception of the glee club and an orchestra, could not be predicted until selection of the talent. Such selection, together with production and presentation of the show, would be subject at all times to supervision and approval by the school authorities. If desired, Mr. Belt would conduct the auditions, production and presentation with such assistance as would be available. There would be a minimum of conversation and introductions, the time being devoted principally to a "fast moving, first rate, entertaining show", and there would be no commercial "spots", though the sponsoring firm would be accorded a brief acknowledgment of its sponsorship at the beginning and end of the broadcast.

This plan was proposed by Mr. Belt to several Washington business establish-

ments. They were not interested in sponsoring it. He then presented it to the Bank, which was interested. A contract between the Bank and Mr. Belt was entered into November 1, 1948.[1] Mr. Belt was to be paid $25 a week and was to make the necessary arrangements with the schools for auditions and transcriptions. Should the Board of Directors of the Bank approve transcribed programs and put them on the air a revised agreement covering the duties and compensation of Mr. Belt would be made.

The school authorities did not at first give the necessary approval. Pursuant to the terms of their agreement the Bank thereupon canceled its contract with Mr. Belt, later paying him $50 in full settlement of a controversy over two weeks compensation.[2] In March, 1949, the Board of Education advised the Bank of its willingness to approve such a program. The Bank then, with the assistance of someone other than Mr. Belt, carried the plan forward with periodical broadcasts for over a year.[3]

Appellant contends (1) the idea was so general and abstract as to be devoid of a property right in the absence of a definite contract, entered into prior to its voluntary disclosure, for compensation for its use; (2) the question whether the idea was sufficiently concrete to warrant legal protection was one of law which the court erroneously submitted to the jury and which this court can decide; (3) to justify legal protection an idea must also be new and novel, a question of fact which the court submitted to the jury without adequate evidence; (4) the court caused improper hypothetical questions to be asked experts who testified as to the market value of the idea.

The problems presented are new in this jurisdiction; but consideration of cases decided by other courts and of the principles involved leads us to conclude that a person has such a property right in his own idea as enables him to recover damages for its appropriation or use by another when the idea is original, concrete, useful, and is disclosed in circumstances which, reasonably construed, clearly indicate that compensation is contemplated if it is accepted and used.[4]

That the idea must be new and novel, or, as sometimes termed, original, is clear. In Lueddecke v. Chevrolet Motor Co., 8 Cir., 70 F.2d 345, 347, recovery was denied in part because the court was not persuaded that the idea was a "novel and useful" one. See, also, Soule v. Bon Ami Co., 201 App.Div. 794, 195 N.Y.S. 574, affirmed, 235 N.Y. 609, 139 N.E. 754. It is not disputed that the issue of novelty is for the jury if the evidence raises a question of fact in that regard. Appellant does contend there was not sufficient evidence of originality to go to the jury. We find, however, that there was conflicting testimony on the subject.[5] Indeed, the trial court thought there was no substantial evidence contrary Mr. Belt's claim of originality.[6]

In addition to being new, novel or original, an idea to be legally protected must also be concrete. The law shies away from according protection to vagueness, and must do so especially in the realm of ideas with the obvious dangers of a contrary rule. An abstract idea, in any event when not the subject of a contract, is so unattached as to be deemed legally without the quality of individual identity or property. Protection of ideas

1. Incorporated in a letter of that date from the Bank to Mr. Belt.

2. This sum was stated to be in full and final payment in the letter forwarding the check, which was received and cashed by Mr. Belt.

3. The Bank expended some $43,000 in connection with these broadcasts.

4. An informative memorandum opinion on the subject was filed by the court below, Belt v. Hamilton Nat. Bank, D.C.D.C., 108 F.Supp. 689.

5. There is no dispute as to what the plan was, and the Bank does not contend on appeal that the programs it broadcast did not follow the plan as originally disclosed.

6. 108 F.Supp. 689, 692.

at all, in contrast with inventions, literary productions and trade secrets, the law with respect to which we do not now consider, must be careful to avoid attributing to individual ownership that which is in reality common property; and it would be unwise to place a burden upon communication of ideas by requiring compensation for their adoption and use. But the dangers suggested are sufficiently avoided to warrant the law in placing an idea among protected property rights when it is definite and concrete, new and novel, has usefulness and is disclosed for commercial purposes in circumstances which the parties ought reasonably to construe as contemplating compensation for its use.

Was this plan concrete? The Bank says this is a question of law which was erroneously left to the jury. An ancillary position is that in any event the instructions to the jury on this issue were inadequate. We need not decide whether in every case it is for court rather than jury to answer the question of concreteness, for we think this plan was concrete and that to have defined the term more fully for the jury in the context of this case would have been to describe a pattern into which Mr. Belt's plan necessarily fitted. This being so the submission of the question to the jury, though with inadequate instructions, did not harm the Bank

If the idea had been merely to broadcast programs of selected student talent it would have been too general and abstract, and perhaps would also have lacked newness and novelty. On the other hand, had the plan been accompanied with a script for each broadcast it would have been sufficiently concrete. Some opinions indicate that such detailing is essential. See O'Brien v. RKO Radio Pictures, D.C.S.D.N.Y., 68 F.Supp. 13, 14, where it is said: "It is the means of expressing these ideas rather than the ideas themselves which warrant protec-

tion." See, also, Bowen v. Yankee Network, D.C.Mass., 46 F.Supp. 62, 63, where it is stated: "Such a right can only exist in the arrangement and combination of the ideas, i. e., in the form, sequence, and manner in which the composition expresses the ideas, not the ideas themselves." We think, however, that in the field of radio broadcasting concreteness may lie between the boundaries of mere generality on the one hand and, on the other, a full script containing the words to be uttered and delineating the action to be portrayed. Where the plan is for a series of broadcasts the contents of which depend upon selection of talent at different times, a detailed program cannot be presented at the preliminary stages of negotiation. This should not in and of itself deprive the originator of a property right in his plan. See Cole v. Phillips H. Lord, Inc., 262 App.Div. 116, 120, 28 N.Y.S.2d 404, 409; Stanley v. Columbia Broadcasting System, 35 Cal. 2d 653, 221 P.2d 73.

As we have seen, in addition to the utilization of student talent selected for each broadcast from a different high school, the show was to be presented and recorded as a student assembly, retaining the atmosphere of a school by referring to the show as a class, to the acts as assignments and to the action as recitations. There was to be a rendition of several pieces by the school glee club, a minimum of conversation and introductions, a brief acknowledgment of sponsorship at the beginning and end of the broadcasts, and no provision for commercial "spots". And a very important element in the plan was the cooperation and participation of the school authorities through the use of school buildings and facilities and the assistance of faculty members. These details, when added to the basic general idea which, alone, would be too abstract, give sufficient concreteness. The cases advanced to support a contrary ruling are of little assistance because of factual differences.[7]

7. Lueddecke v. Chevrolet Motor Co., supra; Bowen v. Yankee Network, supra; O'Brien v. RKO Radio Pictures, supra; Bristol v. Equitable Life Assur. Soc. of United States, 132 N.Y. 264, 30 N.E. 506; Soule v. Bon Ami Co., supra; Wil-

In view of our conclusion that the plan was concrete it is unnecessary to express an opinion as to what protection, if any, should be afforded an abstract idea. Some jurisdictions deny protection in the absence of a contract entered into prior to disclosure and expressly reserving rights in the originator. Alberts v. Remington Rand, Inc., 175 Misc. 486, 23 N.Y.S.2d 892; Williamson v. New York Cent. R. Co., 258 App.Div. 226, 16 N.Y.S. 2d 217; and see Bowen v. Yankee Network, supra, and dissenting opinion in Stanley v. Columbia Broadcasting System, supra, 35 Cal.2d at page 674, 221 P.2d at page 85.[8] We leave this question undecided.

■ A remaining problem is whether the plan, assuming originality, concreteness, and usefulness, the latter of course uncontested because of the use actually made of it, was disclosed to the Bank in circumstances which contemplated compensation for its use. Factually this question is answered by pointing out that when the plan was first disclosed to the Bank it was made the subject of a contract between the parties. This contract, it is true, was largely for Mr. Belt's own personal services, but it nevertheless also placed the disclosure in circumstances indicating that compensation was expected for its use. While the contract itself, as we have said, was terminated, this did not erase the fact of disclosure in those circumstances. Nor did the idea become public property on disclosure to the Bank. See Ryan & Associates v. Century Brewing Ass'n, 185 Wash. 600, 55 P.2d 1053; Stanley v. Columbia Broadcasting System, supra, 35 Cal.2d at page 666, 221 P.2d at page 80;[9] Cole v. Phillips H. Lord, Inc., supra, 262 App.Div. at page 121, 28 N.Y.S.2d at page 409.[10]

Lastly, we do not think it was reversible error for the court to insist, though it need not have done so, that the hypothetical questions put to expert witnesses as to the value of the idea must include the assumption that it was new, novel and original. To require these witnesses to make this assumption did not prejudge the issue of newness, novelty, and originality; for the court made it clear that the assumption was for the purpose of the hypothetical question, and that before considering value the jury itself must determine the issue of novelty.

Affirmed.

---

liamson v. New York Cent. R. Co., 258 App.Div. 226, 16 N.Y.S.2d 217; Haskins v. Ryan, 71 N.J.Eq. 575, 64 A. 436, affirmed, 75 N.J.Eq. 623, 73 A. 1118. Nor, for the same reason, can much help be gained from certain cases relied upon by Mr. Belt, including Liggett & Myers Tobacco Co. v. Meyer, 101 Ind.App. 420, 194 N.E. 206, and Ryan & Associates v. Century Brewing Ass'n, 185 Wash. 600, 55 P.2d 1053, where particular advertising slogans were appropriated.

8. There are also cases which seem to hold that divulgence of even a concrete idea, without contractual protection, precludes recovery. See Lueddecke v. Chevrolet Motor Co., supra, 8 Cir., 70 F.2d at page

348; Bristol v. Equitable Life Assur. Soc. of United States, n. 7, supra.

9. By reason of a statutory amendment in California, Stanley v. Columbia Broadcasting System might not now reflect the law in that state. See Palmer v. Metro-Goldwyn-Mayer Pictures, Cal.App., 259 P.2d 740.

10. The previous efforts of Mr. Belt to enlist the interest of other commercial concerns, in like circumstances of expectation of compensation, did not take this case out of the rule stated, nor did these firms themselves place the idea in the public realm. The Bank obtained the idea from Mr. Belt.