**LAMONS METAL GASKET CO., Appellant,**

v.

**Vernon F. TRAYLOR et al., Appellees.**

No. 13820.

Court of Civil Appeals of Texas.

Houston.

Oct. 11, 1962.

Rehearing Denied Nov. 1, 1962.

B. R. Pravel, Hayden & Pravel, W. James Kronzer, Hill, Brown, Kronzer, Abraham, Watkins & Steely, and Mabel Grey Howell, Houston, for appellant.

Cooper K. Ragan, John L. Russell, and John E. Pledger, Jr., Houston, for appellees.

COLEMAN, Justice.

This is a trade secrets case. Appellee, Vernon F. Traylor, brought this suit for a declaratory judgment and damages for wrongful interference with contract rights against Lamons Metal Gasket Company, a corporation. This corporation answered and filed a cross-action against Traylor, Houston Gasket and Packing Co., Inc., and Southern Metallic Gasket Co., Inc., praying for an injunction restraining them from using or revealing trade secrets of Lamons and for damages. The trial court rendered a declaratory judgment sustaining the position of Traylor, but denied damages. All parties have perfected appeals.

In 1946 W. A. Lamons employed Vernon Traylor as superintendent of a manufacturing establishment which he operated under the trade name of W. A. Lamons Manufacturer. W. A. Lamons produced soft gaskets and sold metallic gaskets purchased on the

market. Subsequently because of increased competition in the soft goods market the working capital of the business was depleted and Lamons determined that the business would have a better chance of success if it produced the metallic gaskets it sold. He discussed the matter with Traylor, who, in addition to his other duties, undertook to build a machine on which such gaskets could be made. While he had no experience in producing such gaskets and had never built such a machine, from his experience as a machinist and knowledge gathered from studying a metallic gasket and literature on metal working machinery, by trial and error he was successful in making an efficient machine. Thereafter he built three more machines, which were put to use by W. A. Lamons.

Traylor became dissatisfied with his employment and discussed going into a competitive business with Bob Owen and Paul Nuckolls. He told them of certain other machines he wished to build to increase the efficiency of the plant. Owen and Nuckolls requested Traylor to remain with W. A. Lamons and they would try to buy this established business. They were successful, and on May 1, 1958, Lamons Metal Gasket Company, a corporation owned by Owen and Nuckolls, purchased the business, machines, and "all and singular the rights and appurtenances thereto." Traylor was retained in the same capacity with the new company at an increased salary. Thereafter he was relieved of some of his management chores so that he could devote most of his time to the building of the new machines. He built five more machines before he left the company in January, 1960.

He then entered into a contract with Houston Gasket and Packing Co., Inc. Within a short time the Lamons Company wrote Houston Gasket and Traylor warning Traylor against making known, and Houston Gasket against making use of, any confidential information or trade secrets which Traylor might have learned while employed by W. A. Lamons or Lamons Metal Gasket Company. Thereafter the contract between Traylor and Houston Gasket was rescinded, but Traylor entered into a contract with Southern Metallic Gasket Co., Inc., a new corporation substantially owned by the principal stockholders of Houston Gasket. He built two machines for Southern Metallic Gasket Co., Inc., substantially similar to those owned by appellant.

Appellant contends that Traylor as superintendent in charge of manufacturing of W. A. Lamons Manufacturer and Lamons Metal Gasket Company was in a special relationship of trust and confidence and that while occupying such relationship he learned how to build the nine machines developed for the specialized purpose of making metallic gaskets. The appellant contends that even though the various component parts of the machines are well known to the trade, the particular combination of parts was adapted to their needs by a process of trial and error and a large expenditure of funds and labor; that the machines in that sense are unique and give them an advantage over their competitors and, even though they may not qualify as inventions in a technical sense, are trade secrets and are entitled to protection as such. The trial court filed findings of fact contrary to the contentions of appellant.

It is undisputed in the record that Vernon Traylor gained his knowledge of the specific machines in question while employed by appellant and W. A. Lamons. There was no express agreement between Traylor and his employers to keep secret the details of the machines which he constructed for them. The trial court found that while Traylor was employed by appellant and W. A. Lamons, he was not informed that the design of the machines was confidential or that either of them claimed trade secrets in connection with the machines. The trial court further found that no precautions were maintained to insure secrecy.

An "employees only" sign was posted on the door to the plant, but there was testimony that the purpose of the sign was to eliminate possible interference with the

work of employees and to minimize the danger of accidental injuries. Friends of Traylor, Lamons, Owen and Nuckolls were permitted to view the machines in operation. Representatives of customers, prospective customers and others were guided through the plant where the machines were demonstrated and their operation explained in detail. The machines were relatively simple and the component parts were not screened or hidden for the purpose of preserving secrecy as to the manner of their design or operation. These findings of the trial court are supported by evidence of probative force and are not contrary to the great weight and preponderance of the evidence.

■ The law will imply as part of the contract of employment an agreement not to disclose information which the employee receives as an incident of his employment, if the employee knows that his employer desires such information kept secret, or if, under the circumstances, he should have realized that secrecy was desired. It could not be considered actionable conduct on the part of an employee to reveal or use information gained in the course of his employment when in fact he did not know that his employer desired such information kept secret, and he was not charged as a matter of law with such knowledge. Laughlin Filter Corp. v. Bird Machine Co., 319 Mass. 287, 65 N.E.2d 545; Bristol v. Equitable Life Assurance Society, 132 N.Y. 264, 30 N.E. 506; Carver v. Harr, 132 N.J.Eq. 207, 27 A. 2d 895; Woolley's Laundry, Inc., v. Silva, 304 Mass. 383, 23 N.E.2d 899, 126 A.L.R. 752; Ridsdale Ellis, Trade Secrets, §§ 26, 41, 55, and 246.

■ The trial court found as a fact that the mechanical means, ideas, and functional operations of the machines were not the subject of a secret; that before January 1, 1960 the machines were fully and completely revealed to the public by conducted tours and demonstrations and that the "mechanical means, ideas and functional operations" of the machines were not hidden and no effort

was made to keep them a secret. These findings are supported by competent testimony in the record and are not contrary to the great weight and preponderance of the evidence. The trial court did not err in refusing to restrain appellee Traylor from using or divulging the information and knowledge of the machines used by appellant in its manufacturing business which he had learned while employed by appellant since such information and knowledge was not secret. Vulcan Detinning Co. v. Assmann, 173 N.Y.S. 334, 185 N.Y.App.Div. 399; Smoley v. New Jersey Zinc Co., D.C., 24 F.Supp. 294 (aff'd 3 Cir., 106 F.2d 314); Laughlin Filter Corp. v. Bird Machine Co., 319 Mass. 287, 65 N.E.2d 545; Sandlin v. Johnson, 8 Cir., 152 F.2d 8; Carver v. Harr, 132 N.J.Eq., 207, 27 A.2d 895.

■ trial court also found that the machines, which Lamons Metal Gasket Company contends are trade secrets, were generally known to the metal gasket industry and metal industry as a whole, and that any differences that might exist between them and other machines in the industry are trivial. There is testimony which supports this finding and, while this testimony is strongly controverted, we cannot say that the finding is so contrary to the great weight and preponderance of the evidence as to be clearly wrong. Since the information, which appellant contends is its trade secret, is generally known in the industry, there is no legally recognizable trade secret. Brown & Root v. Jaques, Tex.Civ.App., 98 S.W.2d 257; Ridsdale Ellis, Trade Secrets, § 20.

The record in this case is voluminous, consisting of 1270 pages of testimony and several volumes of exhibits. The trial court filed some 79 findings of fact and 29 conclusions of law. Both Traylor and Lamons requested additional findings and conclusions, some of which were granted. Lamons filed numerous exceptions to the trial court's findings of fact and conclusions of law and has briefed some 26 assignments of error complaining that most of the fact findings are either supported by no evidence or are against the

great weight and preponderance of the evidence.

The findings of fact which we have discussed are sufficient to support the judgment of the trial court refusing to enjoin appellees' use of the claimed trade secrets. It would serve no useful purpose to discuss appellant's assignments of error separately. We have considered each of them and they are overruled.

While we recognize that it is settled law in this State that confidential information secured by reason of fiduciary relationships may not be used or disclosed by the fiduciary irrespective of an agreement not to do so, Welex Jet Services, Inc. v. Owen, Tex.Civ.App., 325 S.W.2d 856, Hyde Corp. v. Huffines, 158 Tex. 566, 314 S.W.2d 763, the rule is not applicable here since there was no confidential information given to Traylor, and appellant had no trade secret which the court could protect.

Traylor sought damages from Lamons Metal Gasket Company on the theory that Lamons Metal Gasket Company wrongfully had caused Houston Gasket Co. to terminate its contract with him. The trial court found that the letters sent to Traylor and to Houston Gasket by Lamons Metal Gasket, in which they asserted that the machinery constituted trade secrets, were sent in good faith. There are no findings that in sending these letters the Lamons Company acted without legal justification. The trial court also found that Traylor suffered no damage.

Assuming that the Lamons Company's claim of trade secrets in the design of the machinery at issue had been sustained by the trial court, neither Houston Gasket nor Southern Metallic would have been liable for the use of the trade secrets had they purchased such information without notice that such information constituted the trade secrets of the Lamons Company. K & G Oil Tool & Service Co., Inc. v. G. & G. Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782; 4 Restatement of Torts, § 758. From the

record the trial court could have concluded that the Lamons Company was justified in believing that it owned a trade secret and, therefore, was privileged to assert such claimed right. Tidal Western Oil Corporation v. Shackelford, Tex.Civ.App., 297 S.W. 279, writ ref.; 4 Restatement of Torts (1939), § 773. In any event the trial court concluded that Traylor failed to prove damages, and we are unable to hold that damages were proven as a matter of law.

The judgment of the trial court is affirmed.