VIC ALEXANDER & ASSOCIATES, a Wy-
oming Corporation, Appellant
(Defendant below),

v.

CHEYENNE NEON SIGN COMPANY, a Wy-
oming Corporation, Appellee
(Plaintiff below).

No. 3485.

Supreme Court of Wyoming.

Sept. 6, 1966.

Lathrop, Lathrop & Tilker, Carl L. Lathrop, Cheyenne, for appellant.

Roncalio, Graves & Smyth, Charles E. Graves, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

The Cheyenne Neon Sign Company sued Vic Alexander & Associates in connection with the design of a store sign for defendant's jewelry store in Laramie, Wyoming. Plaintiff sought, for a violation of its literary property rights and a misappropriation of its property, $2,218.27 actual damages and $5,000 punitive damages. In the alternative a cause of action in quantum meruit was stated, the plaintiff seeking to recover the value of its services in preparing the design, $2,218.27, on the theory of an implied agreement, and the $5,000 punitive damages.

Trial was to the court without a jury. There was a general finding for plaintiff and it was given judgment in the amount of $1,225. Defendant has appealed claiming: (1) The court erred in granting judgment under either theory asserted by plaintiff; and (2) there was no basis for the assessment of damages against the defendant.

### Right to Compensation

■ It is well settled at common law that an author or creator of a literary or intellectual production has a property right thereto which exists independently of and notwithstanding copyright statutes and entitles him to the exclusive use of his production before publication, such property right being commonly referred to as a common-law copyright. Annotation 77 A.L. R.2d 1048, 1048–1049; 5 Am.Jur.2d, Architects, § 10, p. 672.[1]

Counsel for appellant do not challenge this principle of law. Instead, they argue the design in question was not so novel and original as to allow a common-law copyright to attach. This presents a fact situation, and we have reviewed the record with a view of determining whether there was sufficient evidence for the trial court to find that plaintiff had a property right (in the nature of a common-law copyright) in the design used.

The evidence discloses that plaintiff-sign company designed and constructed a sign for defendant at its Cheyenne, Wyoming, store. Under its contract with the Alexander company, plaintiff retained ownership in the sign and leased it to the Alexander firm for a period of years, with an option to purchase being granted to lessee.

The designing started out to be for a sign at defendant's store in Laramie. A decision was made by the jewelry company, however, to have similar signs at Cheyenne and Laramie, and the Cheyenne sign was constructed first. Plexiglass was to be used in the construction of the signs, and both were to have an awning-appearing design, with bright blue and white vertical stripes running from the top of the store to a marquee over the entrance. The essential difference in the two signs was to be in the height. In Cheyenne, the striped awning reached a height of about fifteen feet above the sidewalk. In Laramie, the awning was to reach a height of thirty feet above the sidewalk; and since this awning was to cover the upper windows of the building, there were additional design problems with reference to light and ventilation.

In addition to the contract for Cheyenne, a contract was entered into between plain-

1. See also the cases of Loew's Inc. v. Superior Court of Los Angeles County, 18 Cal.2d 419, 115 P.2d 983, 984; and Edgar H. Wood Associates, Inc. v. Skene, 347 Mass. 351, 197 N.E.2d 886, 889.

tiff and defendant for the construction of a sign at Laramie, which would be leased by defendant under terms similar to those in effect on the Cheyenne sign. While construction of the Cheyenne sign was underway and before construction of the Laramie sign began, a flooding at defendant's store in Cheyenne occurred. Apparently the sign company was blamed for causing this flooding, and defendant being displeased sought to cancel its contract for the Laramie store. The cancellation was agreed to by plaintiff, and the Laramie contract was rescinded by mutual agreement.

■ Within a few days after cancellation of the Laramie contract the Alexander company entered into a contract with Casper Neon Sign Co. for the construction of its sign at Laramie. We think the evidence is sufficient to show the sign actually built at defendant's Laramie store was substantially a copy and duplication of the one designed by plaintiff-sign company for defendant-jewelry company.

There was testimony tending to show the design for the Alexander signs was worked out by architectural, engineering and designing personnel of plaintiff-sign company. Although this was not done without explanations and suggestions from Vic Alexander, president of the jewelry company, as to what his company desired in the way of signs, there was sufficient evidence from which the trial court could reasonably conclude that the designing was the work of plaintiff's agents and employees.

As to whether the evidence sufficiently established that the design was unique and original, Jackson Brooks, president of defendant-sign company and an architectural and industrial designer, testified the general idea had been in the back of his mind for some time as a means of modernizing and covering an old and unsightly building front. He was asked whether this type of awning effect was common, and in response he testified he had never seen this sort of thing done before or since.

Also, a disinterested expert witness described the design as wonderful architectural and engineering work and gave as his opinion that it was unique and novel. This witness further testified he had never seen a similar store front. It would be a very remote possibility, the witness said, for two people working independently to come up with this particular design or a likeness to it, even if both were given a basic idea to work from.

Blueprints and drawings for the Laramie sign were prepared by plaintiff and left with Alexander. Counsel for appellant argue that the leaving of these drawings in the Cheyenne store and also construction of the Cheyenne sign constitute a publication of plaintiff's work and bar its right to recover. To this counsel for appellee respond by saying publication is an affirmative defense and one not pleaded or raised in the trial of this case; and that by reason of Rule 8(c), W.R.C.P., publication cannot be relied upon in this court.

■ The term "publication," as used in connection with common-law copyrights, is employed to denote those acts of an author or creator which evidence a dedication of his work to the public and on which depends the loss of his common-law copyright. See 18 Am.Jur.2d, Copyright and Literary Property, § 76, p. 366.

■ In this case we cannot say the mere leaving of drawings in defendant's store and the construction of its Cheyenne sign would, as a matter of law, evidence an intention on the part of plaintiff to dedicate its work to the public generally. This determination is necessarily for the trier, and in this instance there is an absence of a finding that publication took place. Thus, it is unnecessary for us to decide whether publication can be urged as a defense without being pleaded as an affirmative defense.

### Assessment of Damages

■ Appellant suggests that cancellation of the contract between plaintiff and defendant terminated all rights and claims which plaintiff can now make. If plaintiff's claim is thought of as one for services rendered, based upon an implied contract,

we can see how appellant might argue that rescission of the contract would cancel claims for services previously rendered; but if the services are subsequently utilized, as they were in this instance, appellant's argument would be questionable.

However, plaintiff also asserts a claim for infringement of a common-law copyright, and appellant's argument could not apply to that claim because the mere cancellation of a contract between plaintiff and defendant would not affect property rights owned by plaintiff in the subject of its common-law copyright. A subsequent appropriation of such property rights by plaintiff would give the owner a right to compensation the same as if the appropriation had been by any other party.

■ Regardless of the fact Casper Neon Sign Co. constructed, installed and now owns the sign which was built according to plaintiff's design, it is clear defendant caused the design to be appropriated, and the defendant as lessee is using such design. There was reason enough, in view of this, for the trial court to hold defendant liable.

■ The contract between plaintiff and defendant for the Laramie sign, which was afterwards rescinded, stated that the display was of no value to owner except as used for the special purpose of user. Appellant contends this admission on the part of plaintiff should estop plaintiff from now asserting a claim for damages. The contention is not valid. There was no admission that the display had no value. On the contrary, both parties appear to have agreed it did have value for the purposes of the jewelry firm.

■ There is ample precedent for holding that the originator of a novel idea reduced to concrete form and disclosed to a wrongful appropriator, under circumstances indicating that compensaton was expected if the idea should be used, may recover from such appropriator in the event his idea is used—even though the idea had value only for the appropriator's purposes. Stanley v. Columbia Broadcasting System, Inc., 35 Cal.2d 653, 221 P.2d 73, 75, 23 A.L.R.2d 216; Liggett & Meyer Tobacco Co. v. Meyer, 101 Ind.App. 420, 194 N.E. 206, 210; and How J. Ryan & Associates, Inc. v. Century Brewing Ass'n, 185 Wash. 600, 55 P.2d 1053, 104 A.L.R. 1353.

■ In the Ryan case just cited, the court said, at 55 P.2d 1055, the value of the service to the appropriator was the proper basis for fixing the amount of compensation. It also said the amount fixed in that case was well within the testimony. We hold the same in the case at bar. The value to the jewelry company was the proper basis for fixing the amount of compensation, and the amount fixed by the trial court was within the testimony.

Affirmed.