COMMONWEALTH *vs.* JOEL ROBINSON.

Middlesex.    January 12, 1979. — April 30, 1979.

Present: KEVILLE, ARMSTRONG, & GREANEY, JJ.

*Trade Secret. Practice, Criminal,* Directed verdict.

At the trial of a defendant charged with obtaining a trade secret by
false pretenses with intent to defraud, the information the defend-
ant fraudulently obtained was not shown to be a trade secret under
G. L. c. 266, § 30(4), where there was no evidence that the owners
of the information took any precaution to secure or preserve the
secrecy of the information alleged to have been misappropriated.
[473-474]

COMPLAINT received and sworn to in the District Court
of Newton on November 3, 1977.

Upon appeal to the Superior Court the case was tried
before *Chernoff,* J., a District Court judge sitting under
statutory authority.

*Joel Robinson*, pro se.

*Peter W. Agnes, Jr.*, Assistant District Attorney, for the Commonwealth.

KEVILLE, J. The defendant Robinson was tried and convicted by a jury under the provisions of G. L. c. 266, § 30 (4),[1] of obtaining by false pretenses with intent to defraud "the trade secret concerning 'Vapormid Process', joint property of Energy Management, Inc. of Newton, Massachusetts, and, Vapor Pak, Inc., of Exeter, New Hampshire." He appeals under G. L. c. 278, §§ 33A-33G. Robinson was represented by counsel at trial but elected on appeal to appear pro se.

Our distillation of Robinson's assignment of errors supports the Commonwealth's contention that the sole question conceivably presented for review is whether there was error in the denial of Robinson's motions for a directed verdict made at the close of the Commonwealth's case and at the conclusion of the evidence. On this issue we apply the familiar standard of review. *Commonwealth* v. *Vellucci*, 284 Mass. 443, 445 (1933). *Commonwealth* v. *Mangula*, 2 Mass. App. Ct. 785, 786 (1975). Although both his assignment of errors and his brief are generally inept, we agree with Robinson's contention that what he allegedly obtained was not shown to be a "trade secret" under § 30 (4).

There was evidence from which the jury could have found those facts set forth in this opinion where pertinent. The Vapormid Process is a fuel conservation system designed to be attached to an oil or gas fired burner. The device is manufactured in the State of New Hampshire

---

[1] General Laws, c. 266, § 30(4), as amended through St. 1968, c. 737, § 10, in pertinent part provides that "Whoever . . . with intent to defraud obtains by a false pretence . . . any trade secret of another . . . shall be guilty of larceny . . . . The term 'trade secret' as used in this paragraph means and includes anything tangible which constitutes, represents, evidences or records a secret scientific, technical, merchandising, production, or management information, design, process, procedure, formula, invention or improvement."

and the headquarters of the manufacturer, Vaporpak, Inc. (Vaporpak), is located in Exeter, New Hampshire. The exclusive distributor of the process for eastern Massachusetts and Rhode Island is Energy Management, Inc. (Energy), whose principal officer is James S. Gordon. The process has numerous distributors in this country and abroad.

Robinson, on the pretext of becoming a dealer for Energy, gained access, inter alia, to a partial list of Energy's customers as well as a dealers' price list and thereafter to a copy of the "Vapormid Technical Reference Manual," which contained detailed information with respect to the installation of the process. Much of that information was not revealed in the patent which covered the process.

Shortly after meeting Gordon, Robinson persuaded him to install one of the Vapormid devices in a burner at Robinson's residence. This was done in the presence of Robinson and other individuals at least one of whom was a stranger to Gordon. Two of these individuals were represented by Robinson to be prospective customers for the device. At Robinson's request, Gordon gave him a specimen of a dealer's contract so that Robinson might discuss it with his lawyer. Nothing in the language of that document refers to the confidentiality of the process. See *Laughlin Filter Corp.* v. *Bird Mach. Co.*, 319 Mass. 287, 289-290 (1946). Robinson never executed a contract or became a dealer in the Vapormid Process for Energy; but without obtaining Gordon's permission, Robinson acquired additional information in regard to the process during visits to the company headquarters and its manufacturing plant in New Hampshire.

A few months after Robinson's first meeting with Gordon, the latter discovered that Robinson had organized a competing company and was attempting to sell a device comparable to the Vapormid Process. Robinson carried on this competitive operation under four different company names in the space of a few months.

General Laws c. 266, § 30(4), has thus far not been construed. We turn to civil cases involving the misappropriation of trade secrets for enlightenment with respect to the meaning of the term "trade secret" under the statute. See *In the Matter of a Civil Investigative Demand Addressed to Yankee Milk, Inc.*, 372 Mass. 353, 359-360 (1977). "The crucial issue to be determined in cases involving trade secrets . . . is whether the information sought to be protected is, in fact and in law, confidential." *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. 835, 840 (1972). Among the criteria to be considered in determining whether the "secret" involved is a trade secret are "(1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of the measures taken by [the employer] to guard the secrecy of the information." Restatement of Torts § 757, Comment (b) (1939). *Jet Spray Cooler, Inc., supra. Jet Spray Cooler, Inc.* v. *Crampton*, 377 Mass. 159, 167 n.9 (1979).

"[I]f the person entitled to a trade secret wishes to have its exclusive use in his own business, he must not fail to take all proper and reasonable steps to keep it secret. He cannot lie back and do nothing to preserve its essential secret quality, particularly when the subject matter of the process becomes known to a number of individuals involved in its use . . . . [O]ne who claims that he has a trade secret must exercise eternal vigilance. This calls for constant warnings to all persons to whom the trade secret has become known and obtaining from each an agreement, preferably in writing, acknowledging its secrecy and promising to respect it." *J. T. Healy & Son* v. *James A. Murphy & Son*, 357 Mass. 728, 738 (1970). However, the obligation of an owner of a trade secret to take precautionary measures to protect its confidentiality must be evaluated in light of the circumstances of each case. See *Jet Spray Cooler, Inc.* v. *Crampton*, 361 Mass. at 843-844.

In the instant case, the jury could readily have concluded that Robinson had fraudulently, through false repre-

sentations, obtained important information concerning the Vapormid Process and employed that information to manufacture and sell a similar device to potential customers of Energy. However, although there was testimony that the information disclosed to Robinson was regarded by the manufacturer and the distributor as confidential, nowhere in the evidence have we discovered any indication that either Vaporpak or Energy took any precaution to secure or preserve the secrecy of the information alleged to have been misappropriated, or to caution Robinson or any other person of its confidentiality.[2]

In the course of developing a new product for a potentially extensive market and in the recruitment of individuals to become engaged in that development, the distributor and manufacturer, in order to protect the trade secrecy of the product, are required to take the precaution of clearly demonstrating their intention to keep secret those matters which they believe are not adequately protected by the patent for the process. See *Laughlin Filter Corp.* v. *Bird Mach. Co.*, 319 Mass. at 289-290; *United States Plywood Corp.* v. *General Plywood Corp.*, 370 F.2d 500, 508 (6th Cir. 1966), cert. denied, 389 U.S. 820 (1967); *Food Processes, Inc.* v. *Swift & Co.*, 280 F. Supp. 353, 366 (W.D. Mo. 1966).

We are therefore obliged to conclude that the tangible information which Robinson fraudulently obtained (the customer and price lists and the reference manual) was not a "trade secret" within the provisions of § 30(4). The

---

[2] To the contrary there were indications that at least some of the information claimed as secret was treated in a manner inconsistent with the idea of secrecy. Gordon testified that the purpose of compiling the customer list was to generate credibility for the product. His testimony indicated that, far from being regarded as confidential, the list was intended for broad dissemination. Additionally, Vaporpak conducted a course of instruction in the method of installing the process, the critical "secret" presumably contained in the reference manual. None of the two or three hundred enrollees in the course, most of whom completed it, was ever warned that the method was confidential.

judgment is reversed, the verdict is set aside, and a judgment of acquittal is to be entered for the defendant.

*So ordered.*