[No. 9608–7–I.   Division One.   February 7, 1983.]

PACIFIC TITLE, INC., *Appellant,* v. PIONEER NATIONAL
TITLE INSURANCE COMPANY, INC., ET AL,
*Respondents.*

*Theodore Cummings,* for appellant.

*Eric Richter, John Roberts,* and *Daniel Murray,* for respondents.

SCHOLFIELD, J.—Pacific Title, Inc. (Pacific) appeals from a judgment dismissing its complaint against Pioneer National Title Insurance Company (Pioneer) for conversion and misappropriation of title information produced through the effort of Pacific and attached to title insurance policies written by Pioneer. We affirm.

Jack Schreiner is the president and owner of Pacific, a Washington corporation which maintains a title plant and conducts two title insurance agencies in Grays Harbor County. Pioneer is a foreign corporation authorized to conduct a title insurance business in the state of Washington. In some counties Pioneer maintains its own title plant, and in other counties it conducts business through an agent who maintains a title plant. Coast Title & Escrow, Inc. (Coast) also conducts a title insurance agency in Grays Harbor County.

Pacific and Pioneer entered into an agency contract in 1964. The negotiations between Pacific and Pioneer's predecessor[1] which resulted in that contract were conducted by Jack Schreiner, on behalf of Pacific, and by H. Eugene Tully, on behalf of Pioneer. Both Mr. Tully and Mr. Schreiner had extensive experience in the title insurance business, and each had a substantial part in negotiat-

---

[1]Washington Title Insurance Company assigned its contract to Pioneer, which succeeded to all Washington's rights and interests under the contract.

ing and drafting the agency contract.

In 1974, the agency relationship between Pacific and Pioneer was terminated pursuant to the terms of the agency contract.

Coast was the agent of Safeco Title Insurance Company in Grays Harbor County from 1969 until 1974. In 1974, an agency relationship was formed between Safeco and Pacific. Coast then entered into an agency relationship with Pioneer.

During the 10–year period from 1964 to 1974, Pacific had issued title insurance policies in Pioneer's name and, pursuant to their agency contract, had forwarded copies of each policy to Pioneer. The information in the policies included the named insured, title holder and interest insured, amount insured, the legal description of the property, and the list of excepted encumbrances, liens, and other defects excluded from coverage. Pacific kept 87½ percent of the premium on each policy, and sent the balance to Pioneer, with a copy of the policy attached.

In May 1975, Pioneer sent to Coast, its new agent, approximately 24,000 Pioneer policies issued by Pacific. Coast later organized some of the policies geographically to facilitate their use in preparation of new title reports.

Pioneer had no notice of any expectation or claim by Pacific to an exclusive right to use Pioneer policies issued by Pacific for the purpose of searching title to the same or related parcels of land until receipt by Pioneer of a letter from Jack Schreiner in 1975. There were no promises or representations relating to use of copies of issued policies by Pioneer to Pacific before or during their agency relationship. The use of prior policies as "starters" is a standard business practice in the operation of title plants.

The trial judge found the contract provisions constituted the entire contract of the parties pertaining to Pioneer's rights relative to the policies issued in the course and scope of Pacific's agency. The court concluded that Pioneer, as principal of Pacific, had an unrestricted right in the policies, including all the information disclosed therein. The

judge additionally concluded that Pacific had no property rights in the policies or the information disclosed in them adverse to or restrictive of the rights of Pioneer. The judge further concluded that if Pacific had any exclusive right to use the information disclosed in the policies for the purpose of searching title to the same or related parcels of land, Pacific lost that right when it disclosed the information by transferring policies to Pioneer without an agreed restriction of Pioneer's right to use or disclose the information. The judge finally concluded that Pacific suffered no compensable damage due to the transfer of the policies from Pioneer to Coast. Pacific's complaint was dismissed with prejudice, and Pacific appeals.

Pacific assigns error to the judge's findings of fact, to his refusal to find other facts, to all his conclusions of law and to the judge's failure to enter conclusions of law proposed by Pacific. Pacific contends there was no dispute as to any material fact in this case, so this court is in the same position as the trial court and must determine the ultimate facts and conclusions to be drawn from the evidence. *Peeples v. Port of Bellingham,* 93 Wn.2d 766, 772, 613 P.2d 1128 (1980). We agree and proceed accordingly.

Pacific contends that, despite the terminology used in the agency contract, Pioneer was actually the agent of Pacific. Pacific argues that it, as true principal in the relationship, owned the information contained in the abstracts of title which it prepared, emphasizing the fact that Pioneer could not conduct business in Grays Harbor County without the title plant facility provided by Pacific (or later by Coast). *See* RCW 48.29.020(2) and RCW 48.29.040. Pacific cites authority stating title insurance is not truly "insurance" but is in the nature of a guaranty or warranty. *Kiniski v. Archway Motel, Inc.,* 21 Wn. App. 555, 559, 586 P.2d 502 (1978). *See also Empire Dev. Co. v. Title Guarantee & Trust Co.,* 225 N.Y. 53, 121 N.E. 468 (1918); *Maggio v. Abstract Title & Mortgage Corp.,* 277 A.D. 940, 98 N.Y.S.2d 1011 (1950). Thus, Pacific contends it, as principal, contracted with Pioneer, its agent, to insure the accu-

racy of Pacific's search and opinion of the status of title for Pacific's customers. Pacific then reasons that the contract did not address the question of the right of Pioneer to use the information in the title insurance policies for any purpose other than financial computations because it was understood by all parties that Pacific owned the information it compiled.

Where there is a material omission in a contract, it is the duty of the court to determine the intention of the parties by viewing the contract as a whole and considering all of the circumstances leading up to its execution, including the subject matter and the subsequent acts and conduct of the parties. *Dennis v. Southworth,* 2 Wn. App. 115, 467 P.2d 330 (1970). Pacific contends it was not reasonable for the parties to have speculated at the time of the execution of the contract that the "abstracts" of title information produced by Pacific would one day be given to their competitor. Indeed, Pacific contends the transfer of "starters" to a competing title company amounted to a conversion of their property rights. Thus, they urge there was a material omission in the contract which this court must supply by determining the intention of the parties on this subject.

■ The express terms of the agency contract defeat Pacific's argument that Pioneer was the agent of Pacific. In that contract, Pioneer appointed and authorized Pacific to be its agent within the definition of the insurance code of the state of Washington. In RCW 48.17.010, the insurance code defines "agent" as follows:

"Agent" means any person appointed by an insurer to solicit applications for insurance on its behalf, and if authorized so to do, to effectuate insurance contracts, and to collect premiums on insurances so applied for or effectuated.

Pacific was the agent of Pioneer.

Paragraph 7 of the contract provides that all services performed involving examination of title, as well as the resulting policies issued, shall be deemed title commitments within the intent of the contract. All services were to be

performed and the policies issued in the name of the principal, Pioneer.

In paragraph 4(d), the contract provides that the agent will maintain a complete file of all title commitments issued, and that "[t]he principal shall at all times have ready access to all such files and records and shall be furnished copies thereof on request." Exhibit 6. Thus, the contract addresses the question of the principal's access to and use of title commitments, and expressly allows such use.

■ Pacific is not correct in its claim that it had and retains an exclusive property right in the information contained in the Pioneer policies it prepared. Although an agent may not use or disclose confidential information obtained during the course of his employment for the principal, *Junker v. Plummer,* 320 Mass. 76, 67 N.E.2d 667, 165 A.L.R. 1449 (1946); *Lamons Metal Gasket Co. v. Traylor,* 361 S.W.2d 211 (Tex. Civ. App. 1962), a principal may use information developed by the agent during the agency in the scope of work to which the agency relates and for which the principal has paid the agent. Restatement (Second) of Agency § 395 (1958). *See generally John Davis & Co. v. Miller,* 104 Wash. 444, 177 P. 323 (1918); *J.L. Cooper & Co. v. Anchor Sec. Co.,* 9 Wn.2d 45, 113 P.2d 845 (1941).

■ Where information is transmitted pursuant to contract in circumstances where the originator knows or should know that the recipient has a legitimate business use for the information, the originator must secure confidentiality by express or implied provision of the contract; absent such provision, he is not entitled to equitable relief. *See Sears, Roebuck & Co. v. L–M Mfg. Co.,* 256 F.2d 517 (3d Cir. 1958). *See also Sallinger v. Conrad & Co.,* 242 Mass. 58, 136 N.E. 79 (1922); *Laughlin Filter Corp. v. Bird Mach. Co.,* 319 Mass. 287, 65 N.E.2d 545 (1946). The originator of information cannot claim a property right in it as against one to whom he has disclosed it without bringing to the latter's attention his expectation that the information will be held in confidence and not used in competition. In con-

trast, disclosure of information transmitted subject to an explicit restriction that no part of the information can be used or adopted except by special arrangement renders the disclosing party liable for damages. *How J. Ryan & Assocs. v. Century Brewing Ass'n*, 185 Wash. 600, 55 P.2d 1053, 104 A.L.R. 1353 (1936).

Pacific admitted that the parties did not consider or address their rights under the contract should Pioneer use the information contained in the title insurance policies for any purpose other than financial computations. Pacific claims no right to "secret" or "confidential" trade information because all title information is a matter of public record and available to anyone searching title. *See K–2 Ski Co. v. Head Ski Co.*, 506 F.2d 471 (9th Cir. 1974). *See also* RCW 19.108.010(4).[2] Since Pacific gave no notice to Pioneer that it claimed a property right in the information or expected Pioneer to maintain the confidentiality of the information in the policies, it retained no exclusive right to the information disclosed therein.

Further, Pioneer's delivery of copies of the policies to Coast did not deprive Pacific of any economic or competitive advantage since Pacific retained copies for its use.

Pacific also contends the trial judge erred in excluding evidence relating to Coast's financial condition, Schreiner's knowledge of the history and development of the title industry, and to the marketability of "priors" or "starters". Pacific contends all of these facts and circumstances should have been considered in determining the intent of the parties to the agency contract and whether a constructive trust should have been imposed, citing *Stender v. Twin City*

---

[2]Pacific's considerable investment in copies of public records facilitates its access to the public information. The ability to obtain the information quickly is one of the main services Pacific provides. However, the character of the information does not change to "secret" or "confidential" through the process of abstraction by Pacific into a readily accessible form. *See generally Jewett–Gorrie Ins. Agency, Inc. v. Visser*, 12 Wn. App. 707, 716, 531 P.2d 817 (1975). *See also Dynamics Research Corp. v. Analytic Sciences Corp.*, 9 Mass. App. Ct. 254, 400 N.E.2d 1274 (1980).

*Foods, Inc.*, 82 Wn.2d 250, 510 P.2d 221 (1973) and *Patterson v. Bixby*, 58 Wn.2d 454, 364 P.2d 10 (1961). We do not agree. None of this evidence tended to prove facts relevant to the interpretation of this specific contract.

Pacific urges unfair competition, unjust enrichment and conversion as theories of recovery. Our conclusion that the contract placed no restriction on the right of Pioneer to use the title information in the policies is dispositive of those claims.

The parties to the agency contract had no intention to condition or restrict Pioneer's use of the policies written by Pacific. The dismissal of Pacific's complaint is therefore affirmed.

DURHAM, A.C.J., and CALLOW, J., concur.

Reconsideration denied March 10, 1983.

Review denied by Supreme Court June 3, 1983.